**Larry L. HILLBLOM; Jose Lifoifoi, Plaintiffs–Appellants,**

**v.**

**UNITED STATES of America; Commonwealth of the Northern Mariana Islands, Defendants–Appellees.**

No. 88–15494.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 15, 1989.

Decided Feb. 21, 1990.

Larry L. Hillblom, pro se.

Peter J. Donnici, Dennis C. Kerwin, Donnici & Lupo, San Francisco, Cal., for plaintiffs-appellants.

John R. Bolton, Asst. Atty. Gen., K. William O'Connor, U.S. Atty., Barbara L. Herwig, Jacob M. Lewis, Dept. of Justice, Washington, D.C., for defendant-appellee U.S.

Before GOODWIN, Chief Judge, PREGERSON and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

The relationship between the United States and Commonwealth of the Northern Mariana Islands ("CNMI") is governed by the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States ("the Covenant"). Pursuant to section 103 of the Covenant, the people of the Commonwealth have the right of local self-government. With respect to their internal affairs, they are entitled to govern themselves according to their own Constitution. However, in the international arena, control of the Commonwealth's international affairs and security needs is delegated to the United States.

The appellants here, two registered voters of the Commonwealth, argue that the United States erroneously "takes the position" that Congress can adopt laws governing the internal affairs of the Commonwealth. Since CNMI voters cannot vote for members of the U.S. Congress, but only for officials of the CNMI, appellants claim that if the United States' position prevails, their votes within the Commonwealth will become diluted or become meaningless.

Appellants seek the following relief: first, an order compelling the United States to appoint a representative under section 902 of the Covenant in order "to reach a constitutional interpretation and understanding of section 103 of the Covenant" and second, an injunction to prevent the United States from enacting or enforcing any laws which violate section 103 of the Covenant and the Fifth and Fourteenth Amendments of the United States Constitution. The District Court for the Northern Mariana Islands denied appellants' motion for preliminary injunction and dismissed appellants' complaint.

We affirm.

## FACTS AND PROCEEDINGS BELOW

The Northern Mariana Islands, which include the islands of Saipan, Rota, and Tinian, are located in the South Pacific north of Guam. After World War II, the United States became the administering authority over the Trust Territory of the Pacific Islands, including the Commonwealth of the Northern Mariana Islands, under a Trusteeship Agreement with the United Nations Security Council. *See* Trusteeship Agreement for the Former Japanese Mandated Islands, 61 Stat. 3301; TIAS No. 1665, art. 3. In January of 1978, the United States and CNMI entered into an agreement guaranteeing CNMI's political independence by jointly signing the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, Pub.L. No. 94–241, 90 Stat. 263 (1976), *reprinted in* 48 U.S.C. 1681 note (1987). Pursuant to section 103 of the Covenant, "[t]he people of the Northern Mariana Islands will have the right of local self-government and will govern themselves with respect to internal affairs in accordance with a Constitution of their own adoption." The United States, in turn, "will have complete responsibility for and authority with respect to matters relating to foreign affairs and defense affecting the Northern Mariana Islands." Covenant, § 104.

In addition, the Covenant provides that certain provisions of the United States Constitution and certain United States statutes apply to the CNMI and prescribes certain conditions regarding future Congressional legislation. Section 501 enumerates the parts of the United States Constitution which apply to the CNMI as if it were one of the several states. The list of provisions includes the Fifth Amendment and the due process and equal protection clauses of the Fourteenth Amendment, but does not include the commerce clause, Art. I, Sec. 8, cl. 3, the territorial clause, Art. IV, Sec. 3, cl. 2, or the supremacy clause, Art. VI, cl. 2. Section 502 of the Covenant states generally that the laws of the United States in existence at the time the Covenant is adopted which apply to Guam and are of general application to the States are applicable to the CNMI. However, United States immigration laws, the minimum wage laws, and the coastwise laws are not applicable to the CNMI, except as otherwise provided in section 502. Covenant, § 503. With respect to future legislative enactments, the Covenant authorizes the United States to "enact legislation in accordance with its constitutional processes which will be applicable to the Northern Mariana Islands." Covenant, § 105. If specific Congressional acts are not applicable to the several states, then they must be made expressly applicable to the CNMI. To further the goal of self-governance, the Covenant provides that Articles I, II, III and Sections 501 and 805 of the Covenant cannot be modified without mutual consultation and agreement between the CNMI and United States Government. *A & E Pacific v. Saipan Stevedore*, 888 F.2d 68, 71 (9th Cir.1989). Finally, section 902 of the Covenant sets forth provisions for regular consultations between the two governments, "[a]t the request of either Government, and not less frequently than every ten years."

The Covenant was approved by 78.8% of the CNMI voters, and by the United States Congress in a joint resolution signed by the President on March 24, 1976. Pub.L. No. 4534, 42 Fed.Reg. 56593 (1977). In accordance with Article II of the Covenant, the people of the CNMI formulated and approved their own Constitution which Presi-

dent Carter proclaimed in effect on January 9, 1978. As of November 3, 1986, the Covenant was in full force and effect, and the authority of the United States under the U.N. Trusteeship was terminated. Currently, the authority of the United States towards the CNMI arises solely under the Covenant.

In May 1988, a CNMI Task Force studying the effects of the Trusteeship termination reported its apprehension that the United States would try to govern the internal affairs of CNMI through the territorial clause of the U.S. Constitution.[1] The following month, June 1988, appellants filed this lawsuit, seeking an injunction to prevent the enactment or enforcement of laws violating the Covenant, and an order mandating the United States to appoint a negotiator pursuant to section 902 and to confer and bargain in good faith in order "to reach a constitutional interpretation and understanding of section 103 of the Covenant."

While not mentioned in the appellants' complaint, the CNMI Legislature, in oral argument supporting its motion to intervene, referred to two laws the U.S. Congress had passed and one proposed bill which threatened to chill the powers of the CNMI Legislature. The appellants cite two of those statutes, plus a third, to support their voting rights argument.

In May 1988, before the appellants filed their complaint, President Reagan had appointed Becky Norton Dunlop as his special representative to bilateral consultations with CNMI, pursuant to section 902 of the Covenant. This appointment was announced by the White House on May 13, 1988, and reported in the CNMI press, but Dunlop did not contact CNMI's Governor Tenorio until July 1st. Governor Tenorio's special representative communicated with Dunlop regarding the negotiations on July 26, 1988.

In October, the district court denied appellants' request for an order to compel the United States to appoint a negotiator, stating that the motion was moot since a negotiator had already been appointed. The court dismissed the entire complaint on the ground that it failed to state a justiciable case or controversy. The judge, in an order which has not been appealed, also dismissed a motion by the CNMI Legislature to intervene, or to file a brief as amicus curiae.

## DISCUSSION

■ Appellants Hillblom and Lifoifoi allege that their right to vote for CNMI officials will be devalued because the United States "takes the position" that it may enact laws affecting the internal affairs of the CNMI without the consent of the CNMI government. The theory is that if Congress enacts legislation affecting the internal affairs of the CNMI, this action would reduce the authority of the CNMI Legislature in the same field, thereby rendering appellants' votes for CNMI officials less meaningful. Without addressing the logic of the voting rights theory and viewing the complaint in the light most favorable to the moving party, appellants' allegations are insufficiently concrete to support their claim. Their assertion that the United States has taken a particular "position" regarding the scope of U.S. authority is not based on any formal declarations, communiques, or statements issued by the United States government or upon any legislative action adopting a position, but upon one isolated and somewhat unrelated com-

---

1. The territorial clause states: "The Congress shall have power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." *U.S. Const.,* art. IV, sec. 3, cl. 2. While it is unclear exactly what prompted the Task Force's initial apprehension, the report asserts that the United States "intends to govern the Northern Mariana Islands through the Territorial Clause," but nowhere states where or when that intention was expressed. Later in the report, the Task Force takes a somewhat different position by proposing to ask the United States *if* it intends to govern CNMI though the territorial clause. It should be noted that section 501 of the Covenant explicitly enumerates the parts of the U.S. Constitution which apply to the CNMI, and despite the concerns of the Task Force, the territorial clause is not included in the list.

ment by counsel for the United States.[2] Allegations of injury are premised on potential future acts of the U.S. Congress which may, in some unforeseen manner, undermine their aspirations for self-government. For example, appellants claim that: (a) "[d]irectly impacting the rights of Appellants is the threat by the United States of the future use of the Territorial Clause to justify unilateral United States authority in the CNMI;" (b) the United States is "claiming that its government has ultimate authority" over local laws; (c) the United States "now seeks to alter the basic terms of the Covenant;" and (d) "the United States has, and threatens to in the future, ignore the Covenant."

■ A long line of Supreme Court cases has delineated the type of controversy which is appropriate for judicial determination. "As is well known, the federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues, 'concrete legal issues, presented in actual cases, not abstractions,' are requisite." *United Public Workers v. Mitchell,* 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947). "A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937) (citations omitted). The ripeness doctrine demands that litigants state a

claim on which relief can be granted and that litigants' asserted harm is "direct and immediate" rather than speculative or hypothetical. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 152, 87 S.Ct. 1507, 1517, 18 L.Ed.2d 681 (1967). *See also Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (plaintiff "must demonstrate a realistic danger of sustaining a direct injury"); *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) ("the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.' "); *Del Percio v. Thornsley,* 877 F.2d 785, 786–87 (9th Cir.1989) (same). At the current time, Hillblom and Lifoifoi have yet to suffer the type of injury which warrants judicial intervention.

■ The "basic rationale" for the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements" over policy with other branches of the federal government. *Abbott,* 387 U.S. at 148, 87 S.Ct. at 1515. While *Abbott* addressed potential conflicts with administrative agencies, the doctrine is also applicable to actions of the President and of Congress. In his concurring opinion in *Goldwater v. Carter,* 444 U.S. 996, 997–98, 100 S.Ct. 533, 533–34, 62 L.Ed.2d 428 (1979), Justice Powell relied on the ripeness doctrine to dismiss a challenge to the President's unilateral termination of a mutual defense treaty with Taiwan. "The Judicial Branch should not decide issues affecting the allocation of power between the President and Congress until the political branches reach a constitutional impasse.... In the present posture of this case, we do not know whether there ever will be an actual confrontation between the

**2.** In response to the charge that the U.S. government has asserted a position, an assistant U.S. attorney commented that "insofar as the enactment of legislation is concerned the 'positions' that will count are those of 100 senators, 435 representatives and the President." Appellants allege that by not mentioning the Covenant or the role of the CNMI government, "the position of the United States that it has unfettered authority in the CNMI is clearly set out." The

statement by the assistant U.S. attorney is correct and cannot reasonably be deemed to be in contravention of the Covenant. It simply notes that the proper means to determine whether Congress is usurping authority is to examine Congressional enactments. Furthermore, the single comment by an assistant U.S. attorney cannot be interpreted as "the position" of the United States government in the sense of an authoritative and binding official declaration.

Legislative and Executive Branches." *Id.* at 997–98, 100 S.Ct. at 534. Similarly, we do not know in this case whether Congress will ever adopt any statutes or the United States government will ever take any formal actions which will entrench on the authority purportedly reserved to the CNMI. In the absence of any such steps by the United States, the issue raised by appellants "is not ripe for judicial review." *Id.* at 997, 100 S.Ct. at 533.

■■■ We have not been called upon to adjudicate a challenge to a specific statute which violates a provision of the Covenant[3] or to interpret a particular section of the Covenant in light of a concrete and actual controversy. Such actions are generally within the authority of the court. Instead, appellants requests this court to take a more intrusive step, contrary to the mandates of Article III of the United States Constitution. Appellants in their complaint request the court to "declare the inapplicability to the Northern Mariana Islands of any law 'which substantially affects the lives of the inhabitants....' " Essentially, they seek a judicial declaration outlining the permissible scope of future Congressional actions. In effect, appellants are requesting an advisory opinion, in the abstract, setting forth the political divisions between the U.S. Congress and the CNMI Legislature. Such a request clearly runs counter to the purposes of Article III jurisdiction. "When the federal judicial power is invoked to pass upon the validity of actions by the Legislative and Executive Branches of the Government, the rule against advisory opinions implements the separation of powers prescribed by the Constitution and confines federal courts to the role assigned them by Article III." *Flast v. Cohen,* 392 U.S. 83, 96, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968). This admonition is all the more relevant where no specific action or statute is being challenged, but rather whole categories of potential future acts. Under the present circumstances, we are not willing to "intrude into areas committed to the other branches of government." *Id.* at 95, 88 S.Ct. at 1950.

■■ We also affirm the district court's disposition of the section 902 negotiations issue. While the change of administration has resulted in the resignation of the negotiator appointed by the former President,[4] we agree with counsel for the United States that a permanent representative is not required under the Covenant and that in all likelihood, a new representative will be appointed by the current administration.

---

**3.** In their complaint, appellants challenge "the position" of the United States concerning the enactment of future laws affecting the internal affairs of the CNMI, not the validity of any particular statute. On appeal, appellants cite to three statutes which they allege exemplify the intent of Congress to govern the CNMI through the territorial clause or the commerce clause, in violation of the Covenant. The three acts, the Swine Health Protection Act, the Magnuson Fishing Act, and the Shipping Act of 1984, all fail to substantiate their claim. None of these acts was enacted in derogation of appellants' rights under the Covenant. Section 502 of the Covenant provides that certain laws of the United States already in effect, as well as subsequent amendments to them, will pertain to the CNMI. Furthermore, section 502(a)(2) expressly includes laws which apply to Guam, and which are generally applicable to the States. Two of the cited acts, the Swine Health Protection Act, 7 U.S.C. § 3802(4), and the Magnuson Fishery Conservation Act, 16 U.S.C. § 1802(21), are expressly applicable to both Guam and the States, and thus are applicable to the CNMI pursuant to the Covenant.

In *A & E Pacific v. Saipan Stevedore,* 888 F.2d 68 (9th Cir.1989), we held that the third act cited by appellants, the Shipping Act of 1984, 46 U.S. C.App. §§ 1701–20 ("Act"), is applicable to the CNMI. The Act is "expressly made applicable not only to the CNMI but to the several States as well" in accordance with section 105 of the Covenant. *Id.* at 71. Furthermore, "[c]ontrary to the contention of appellants, nothing in the Act interferes with CNMI's right of self-government, or modifies Articles I, II, III, or sections 501 or 805 of the Covenant." *Id.* at n. 3. Accordingly, the allegation that the Act is in contravention of the terms of the Covenant is without merit.

The citation to these statutes in no way demonstrates that Congress has acted in violation of the Covenant, or intends to violate it. In short, the references to these acts fail to support appellants' allegation.

**4.** Counsel for the United States noted in oral argument that Ms. Becky Norton Dunlop resigned on June 9, 1989.

In any event, at the time of the judgment below, there was a duly appointed representative of the United States. That representative possessed the authority to discuss in good faith any disagreements with respect to issues such as the interpretation of section 103 of the Covenant.[5] No evidence was adduced that the representative would fail to execute faithfully her responsibility under section 902. Accordingly, the district court's decision with respect to this issue was not erroneous, and we, therefore,

AFFIRM.

---

**5.** Because of our holding, we do not consider the interrelationship between section 103 of the Covenant which accords the people of the CNMI the right of self-government and section 105 which allows Congress to enact legislation affecting the CNMI in accordance with our constitutional processes. To the extent a serious disagreement may exist as to Congress' right to adopt certain *types* of legislation, the two government have agreed upon a procedure for attempting to resolve it—the appointment of negotiators. That is not to say that under appropriate circumstances a proper legal challenge could not be asserted in the courts to specific Congressional legislation, *see, e.g., A & E Pacific v. Saipan Stevedore,* 888 F.2d 68 (9th Cir.1989), or possibly even to a position formally adopted by the United States government regarding its powers under the Covenant. However, no such concrete challenge is before us today. We do not consider, therefore, who the proper parties to any such suit might be.