**AYDIN CORPORATION,**
**Plaintiff–Appellant,**

v.

**UNION OF INDIA, Defendant–Appellee.**

No. 90–15656.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 14, 1991.

Decided Aug. 2, 1991.

Michael L. Harrison, Harrison & Kaylor, San Jose, Cal., for plaintiff-appellant.

Margaret Ecker Nanda, Matteoni, Saxe & Nanda, San Jose, Cal., Durvasula S. Sastri, Schnader, Harrison, Segal & Lewis, Washington, D.C., for defendant-appellee.

Before ALARCON, KOZINSKI and RYMER, Circuit Judges.

RYMER, Circuit Judge:

In 1976, Aydin contracted to sell equipment to the government of India. The agreement called for the parties to submit any dispute arising out of it to arbitration. India claimed that Aydin violated the contract and in 1986 commenced arbitration proceedings in India. Aydin then filed this suit, seeking a declaration that any award from the pending arbitral proceeding in India would be unenforceable against it in the United States. The district court dismissed for want for jurisdiction, holding that Aydin's claim was not ripe for review. We affirm.

The existence of subject matter jurisdiction is a question of law we review de novo. *Kruso v. International Tel. & Tel. Corp.,* 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).

"Jurisdiction to award declaratory relief exists only in 'a case of actual controversy.'" *Wickland Oil Terminals v. Asarco, Inc.,* 792 F.2d 887, 893 (9th Cir.1986) (citing 28 U.S.C. § 2201(a)); *see Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 272, 61 S.Ct. 510, 512, 85 L.Ed. 826,

828 (1941) (district court is "without power to grant declaratory relief unless such a controversy exists"). "The 'actual controversy' requirement of the Act is the same as the 'case or controversy' requirement of Article III of the United States Constitution. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–40, 57 S.Ct. 461, 463, 81 L.Ed. 617[, 620–21] (1937). Thus, the Act requires no more stringent showing of justiciability than the constitution does." *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.,* 655 F.2d 938, 942 (9th Cir.1981).

In order for a case to be justiciable under Article III of the Constitution, it must be ripe for review. *See generally Hillblom v. United States,* 896 F.2d 426, 430–31 (9th Cir.1990) (reviewing ripeness cases). Under the strictest interpretation of the ripeness doctrine, all declaratory judgment claims would be suspect, because declaratory relief involves plaintiffs seeking to clarify their rights or obligations *before* an affirmative remedy is needed. The Supreme Court has rejected that strict conception, upheld the constitutionality of the Federal Declaratory Judgment Act, *Aetna,* 300 U.S. at 228, 57 S.Ct. at 462, 81 L.Ed. at 618, and recognized that "[t]he difference between an abstract question and a 'controversy' contemplated by the ... Act is necessarily one of degree." *Maryland Casualty,* 312 U.S. at 273, 61 S.Ct. at 512, 85 L.Ed. at 828–29; *see also Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 297, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895, 906 (1979). Article III requires that there be a "substantial controversy ... *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." *Maryland Casualty,* 312 U.S. at 273, 61 S.Ct. at 512, 85 L.Ed. at 829 (emphasis added) (citing *Aetna,* 300 U.S. at 239–42, 57 S.Ct. at 463–64, 81 L.Ed. at 620–22); *see generally Societe de Conditionnement,* 655 F.2d at 942–43 (discussing controversy

requirement and declaratory judgments). The question in this case, then, is whether the enforceability in United States courts of a foreign arbitral award that has yet to be awarded is "of sufficient immediacy and reality" such that it is ripe for review.

We hold that it is not. The future existence and enforcement in the United States of an Indian award against Aydin is speculative. Aydin may prevail in the Indian arbitration, leaving no award to enforce. *See Pacific Gas and Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 203, 103 S.Ct. 1713, 1721, 75 L.Ed.2d 752, 764 (1983) ("because 'we cannot know whether the Energy Commission will ever find a nuclear plant's storage capacity to be inadequate,' judicial consideration of this provision should await further developments"). Even if India prevails in the arbitration, it may be content to stand pat with its Indian judgment. The possible injury to Aydin is not " 'certainly impending,' " *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320, 353 (1974) (quoting *Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 67 L.Ed. 1117, 1130 (1923)), and Aydin's assertion that "it cannot be questioned" that the district court will ultimately be called to pass upon this controversy is unsupported. "[R]ipeness is peculiarly a question of timing," *Rail Act Cases,* 419 U.S. at 140, 95 S.Ct. at 357, 42 L.Ed.2d at 351, and given the speculative and remote course of events that stands between Aydin and its contemplated injury, we conclude that this case's time has not yet come.

Aydin expressly admits that it does not seek to avoid arbitration, does not contend that the arbitration clause in the agreement fails to encompass the underlying dispute, nor does it claim that it is not obligated to arbitrate in India, under Indian law.[1] Unlike a typical declaratory judg-

---

1. Given these admissions, we do not see how our colleague thinks we have missed a claim. Aydin concedes it must arbitrate in India; it merely quibbles with the details of how the arbitration happens to be unfolding.

*Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 580, 105 S.Ct. 3325, 3332, 87 L.Ed.2d 409, 419 (1985), to which Judge Kozinski analogizes, is distinguishable. In that case, the plaintiffs argued that a Congressional scheme compelling arbitration was unconstitu-

ment plaintiff who is uncertain of rights and obligations under a contract and seeks judicial guidance in determining what the appropriate next step should be, Aydin points to no uncertainty in its contract's arbitration clause. The declaration Aydin seeks would do nothing to clarify Aydin's contractual obligations.

We do not doubt that Aydin would find a favorable declaration helpful; it might use such a pronouncement to persuade India to settle the dispute or forego the pending arbitration, saving Aydin the expense and inconvenience of appearing in proceedings on another continent. But it is not the function of the federal courts to crystallize the litigation strategies of parties whenever asked to do so. Practical usefulness to litigants or not, the Constitution confines the power of the federal courts to issue declaratory judgments to disputes that are sufficiently immediate and real. This dispute has not yet reached that stage.

Because the district court correctly concluded that this action is not ripe for review, its judgment is

AFFIRMED.

KOZINSKI, Circuit Judge, concurring:

Be it through clever pleading or blind luck, Aydin has managed to assert two types of injury in its complaint for declaratory relief. In its opinion, the majority addresses only one of Aydin's alleged injuries while overlooking the other.

Aydin first claims it will be injured by an adverse award in the Indian arbitration unless the district court declares that an award against Aydin would be unenforceable in the United States. As the majority concludes, any claim arising from this inju-

ry does not yet create a case or controversy under Article III. So far we agree.

But Aydin also claims it is injured by being compelled to participate in an arbitration proceeding from which any decision, either favorable or unfavorable to Aydin, will be invalid because the structure and format of the arbitration are fatally flawed.[1] It seeks a declaration from the district court that any decision from the arbitrator is unenforceable in the United States so that it can spare itself the expense and uncertainty of participating in an arbitration it claims is a legal nullity.

Admittedly, the expense and uncertainty of participating in an adjudicative proceeding normally are not adequate harms for the purpose of establishing an Article III case or controversy. However, here we have a claim that the result of this adjudicatory proceeding will have no binding effect whatsoever. In such a case, a participant would suffer an Article III injury by being compelled to expend resources without receiving any benefit, not even a final binding resolution of the subject dispute.

Unlike Aydin's first claimed injury, this second type of injury occurs regardless of the outcome of the arbitration. Thus no "speculative and remote course of events ... stands between Aydin and its contemplated [second] injury." *Ante* at 528. In a similar case, *Thomas v. Union Carbide Agric. Prods.*, 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985), the Supreme Court found that "it is sufficient for purposes of a claim ... challenging a tribunal's jurisdiction that the claimant demonstrate it has been or inevitably will be subjected to an exercise of such ... jurisdiction." *Id.* at 580, 105 S.Ct. at 3332. Article III jurisdic-

---

tional and that they therefore should never have had to arbitrate in the first place. We have no such claim here. In our case, Aydin *admits* that it is contractually obligated to arbitrate in India, unlike the *Thomas* plaintiffs, who contended they had no valid obligation to arbitrate their claims at all.

1. In its complaint, Aydin asked the district court to "find and declare as its judgment that any award made in the above-described arbitration will be unenforceable in the courts of the United States." ER–19. Before us Aydin asserts

that this request for relief encompassed a claim that no decision by the arbitrator could be enforced in the United States, even if the decision was to Aydin's benefit.

The majority does not address this claim, perhaps because my colleagues do not read the complaint as stating such a claim. While reasonable minds might differ on this point, we are instructed to construe pleadings liberally at this stage in the proceedings. *Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957).

tion was found to exist in *Thomas* because the injury did not depend on whether the tribunal issued a favorable or unfavorable award, but on whether the tribunal had authority to adjudicate the controversy in the first place. *See id.*

Whether Aydin's second injury creates an Article III case or controversy under the rationale of *Thomas* turns on whether the alleged flaws in the arbitration operated to preclude enforcement of *any* decision by the arbitrator. This question cannot be resolved on the record before us because the district court did not address the factual allegations underlying Aydin's second asserted injury. *See Berardinelli v. Castle & Cooke, Inc.*, 587 F.2d 37, 39 (9th Cir.1978). The court made no attempt to ascertain what support Aydin had for its assertions of structural and methodological flaws (as opposed to its assertions of bias and unequal treatment). Without findings on such jurisdictional facts, we can only speculate as to whether an Article III case or controversy exists here. *See Land v. Dollar*, 330 U.S. 731, 738–39, 67 S.Ct. 1009, 1012–13, 91 L.Ed. 1209 (1947).

In any event, it is unnecessary to resolve whether Aydin's second injury is sufficiently concrete to create an Article III case or controversy. Even when there is jurisdiction under Article III, a court may decline to hear a request for declaratory relief because of prudential considerations, such as the relative hardships to the parties, judicial economy and international comity. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967); *cf. Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 638–40, 105 S.Ct. 3346, 3359–61, 87 L.Ed.2d 444 (1985) (international comity and international commercial arbitration).

These prudential concerns weigh heavily against Aydin. We should be reluctant to pass judgment on another sovereign's dispute resolution procedures until it becomes absolutely necessary to do so. There is still time for any structural flaws in the arbitration to be cured, and Aydin's active participation may provide the impetus for such corrective action. Moreover, even if the arbitrator's decision is unenforceable in the United States, the two parties may resolve their differences before a federal court is ever asked to enforce the arbitrator's decision. Finally, Aydin's injury of unnecessarily expending time and resources is not of such severity that foregoing current resolution of its claim will be inequitable; Aydin consented to arbitrate its dispute in India and is therefore poorly positioned to claim that forcing it to arbitrate there is inequitable.

While I reach the same result as my colleagues, I am troubled by the majority's categorical assertion that a litigant in Aydin's position cannot allege sufficient injury to cross the Article III case or controversy threshold. I believe the standard is somewhat more lenient than my colleagues admit. Nonetheless, I concur.