Concepcion S. **Wabol**, et al.,
Plaintiffs/Appellees,

v.

Victorino U. **Villacrusis**, et al.,
Defendants/Appellants.
Appeal No. 89-005
Civil Action No. 84-0397
Order of Dismissal
April 6, 1994

Motion Concerning Jurisdiction
Argued and Submitted November 27, 1989

Counsel for appellants: Theodore R. Mitchell, Saipan.

Counsel for appellants: Marybeth Herald, Saipan (Fitzgerald, Herald & Bergsma).

BEFORE: DELA CRUZ, Chief Justice, and VILLAGOMEZ and ATALIG, Justices.

PER CURIAM:

The U.S. Court of Appeals for the Ninth Circuit issued a judgment on December 6, 1993[1], reversing our December 11, 1989, decision and order[2] asserting jurisdiction over the appeal on this matter. The Ninth Circuit ruled that we have no jurisdiction. We have received its mandate with directions to dismiss this particular appeal. In view of that mandate, therefore, it is **ORDERED** that this appeal be, and is hereby, **DISMISSED**. The clerk of court shall issue our mandate immediately to the Superior Court.

---

VILLAGOMEZ, Justice, concurring:

I agree to dismiss this appeal in accordance with the Ninth Circuit's mandate. However, I write separately to point out an incomplete statement of the law in the Ninth Circuit's opinion. I also write to clarify the nature of the relationship between the court system of the Commonwealth of the Northern Mariana Islands (CNMI or Commonwealth"), and the federal court system in the Ninth Circuit, which is governed exclusively by the COVENANT TO ESTABLISH A COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS IN POLITICAL UNION WITH THE UNITED STATES OF AMERICA ("Covenant").[3]

**The Opinion**

The discussion section of the opinion begins with an incomplete, and consequently misleading, statement of the law. The court says that it has "jurisdiction over all appeals from the final decisions of the CNMI Supreme Court for 15 years following the establishment of an appellate court for the Northern Mariana Islands, pursuant to 48 U.S.C. § 1694c(a)."[4] Section 1694c(a), however, does not provide that the Ninth Circuit has jurisdiction over all appeals from final decisions of the CNMI Supreme Court. That section provides:

> The United States Court of Appeals for the judicial circuit which includes the Northern Mariana Islands shall have jurisdiction of appeals from all final decisions of the highest court of the Northern Mariana Islands from which a decision could be had in all cases *involving the Constitution, treaties, or laws of the United States*, or any authority exercised thereunder, unless those cases are reviewable in the District Court for the Northern Mariana Islands pursuant to section 3 of this Act [48 U.S.C. § 1694b].[5]

Section 1694c(a) limits the Ninth Circuit's jurisdiction to cases involving the Constitution, treaties, or laws of the United States, or any "authority exercised thereunder."

---

[1] *Wabol v. Villacrusis*, Appeal No. 90-15101 (9th Cir. Dec. 6, 1993).

[2] *Wabol v. Villacrusis*, 1 N.M.I. 34 (1989).

[3] 48 U.S.C. § 1801 note, *reprinted in* CMC at B-101 et seq.

[4] *Wabol, supra* note 1 (slip op. at 13647).

[5] 48 U.S.C. § 1694c(a) (emphasis added).

It does not confer jurisdiction in cases involving the local Constitution and laws of the CNMI.

In its preliminary statement, the opinion also states "[w]e reverse because we conclude that pursuant to our decision in *Wabol I*, the CNMI Supreme Court lacked jurisdiction to review the judgment of the Appellate Division of the District Court for the Northern Mariana Islands (Appellate Division)."[6] I agree that we lack jurisdiction to review any judgment of the Appellate Division. However, this Court never intended to review the judgment of the Appellate Division. If the present case had proceeded on the merits before this Court, we would have reviewed only the judgment of the trial court.

### The Covenant

The Covenant provides that the CNMI may use the federal district court for the Northern Mariana Islands as its appellate court from time to time, and that the CNMI may either remove or vest such appellate jurisdiction as circumstances necessitate.[7] Additionally, by the plain language of the Covenant, the Covenant itself governs the relationship between the CNMI courts and federal courts.[8]

---

[6] *Wabol, supra* note 1 (slip op. at 13645).

[7] Covenant § 402(c); Marianas Political Status Commission, *Section by Section Analysis of the Covenant to Establish a Commonwealth of the Northern Mariana Islands* [hereinafter *Analysis*] at 36 (Feb. 15, 1975). Covenant § 402(c) provides:

> The District Court will have such appellate jurisdiction as the Constitution or laws of the Northern Mariana Islands may provide. When it sits as an appellate court, the District Court will consist of three judges, at least one of whom will be a judge of a court of record of the Northern Mariana Islands.

The *Analysis* states: "The Legislature may choose at any time and from time to time to establish appellate courts of the Northern Marianas and eliminate the appellate jurisdiction of the District Court." *Id.* at 36.

[8] Covenant § 102 ("The relations between the Northern Mariana Islands and the U.S. will be governed by this Covenant which, together with those provisions of the Constitution, treaties and laws of the U.S. applicable to the Northern Mariana Islands, will be the supreme law of the Northern Mariana Islands"); *United States ex rel. Richards v. Guerrero*, 4 F.3d 749, 754 (9th Cir. 1993) ("we emphasize that 'the authority of the U.S. towards the CNMI arises solely under the Covenant'") (quoting *Hillblom v. United States*, 896 F.2d 426, 429 (9th Cir. 1990)).

The people of the Northern Mariana Islands designated the Appellate Division of the federal District Court as their local appellate court when they implemented their constitutional government in 1978. The people of the CNMI did not specifically designate the Ninth Circuit as their local appellate court; the U.S. Congress made this designation,[9] and did so without the consent of the people of the CNMI.

Under the Covenant, when the Appellate Division reviewed local cases from the CNMI trial court, it acted as a local appellate court interpreting local law. Likewise, when the Ninth Circuit reviewed local cases from the Appellate Division, it acted as a local appellate court, interpreting local law.

In 1989, by the enactment of Public Law 6-25 ("PL 6-25"),[10] the people of the CNMI exercised their power to terminate the appellate jurisdiction of the Appellate Division, the Ninth Circuit, and the U.S. Supreme Court in local cases, and to transfer all pending cases to their newly established CNMI Supreme Court.

### Issue

The issue in this case is whether the Ninth Circuit may continue to act as a local appellate court of the CNMI in local cases pending before it, subsequent to the Commonwealth people's termination of the appellate jurisdiction of federal courts over local matters.

### Discussion

Through their legislative representatives who enacted PL 6-25, the people of the CNMI expressed their decision to terminate all Ninth Circuit appellate jurisdiction in local cases, and to transfer any pending local cases to the CNMI Supreme Court. The Ninth Circuit has decided to continue acting as a local appellate court in pending cases such as the present one. In so doing, it fails to give effect to the will of the people, and, thereby,

---

[9] See 48 U.S.C. § 1694b(c):

> The U.S. Court of Appeals for the Ninth Circuit shall have jurisdiction of appeals from all final decisions of the appellate division of the district court. The U.S. Court of Appeals for the Ninth Circuit shall have jurisdiction to promulgate rules necessary to carry out the provisions of this subsection.

[10] Commonwealth Judicial Reorganization Act of 1989 (codified in scattered sections of 1 CMC division 3).

to the basic principles of democracy embraced in the Covenant.

The Preamble to the Covenant recites:

> Whereas, the people of the Northern Mariana Islands and the people of the United States share the goals and values found in the American system of government based upon the principles of *government by the consent of the governed*, individual freedom, and democracy;
>
> . . .
>
> . . . .
>
> Now, therefore, the Marianas political status commission . . . and the personal representative of the President of the United States have entered into this Covenant in order to establish a self-governing Commonwealth.[11]

The CNMI's right to self-government, guaranteed by the Covenant, must be recognized, and, in consideration of the unique political relationship between the Commonwealth and the U.S., needs to be protected vigorously under the principle of "government by the consent of the governed."

Unlike citizens of the fifty states, citizens of the CNMI have a voice only in local government; they have no voice in the federal government. Citizens of the fifty states, on the contrary, elect the U.S. President, who appoints federal judges. Citizens of the fifty states elect U.S. Senators, who confirm the appointment of federal judges. They elect members of the U.S. House of Representatives, who, if necessary, initiate articles of impeachment of federal judges. Through their representatives in the U.S. Congress, citizens of the fifty states make the laws that create the federal court system. In other words, the federal government, including the judicial branch, is a creature of the fifty states. It is a government of the states, by the states, and primarily for the states. The interests of the states and their citizens are well protected by their elected and appointed federal officials in all three branches of the federal government.

The citizens of the CNMI, in contrast to citizens of the fifty states, have no voice in the election of a single Representative or Senator in the U.S. Congress, or the U.S. President, or in any federal referendum, plebiscite, or constitutional convention, or in the enactment of any federal law. In the absence of participation or consent, citizens of the CNMI should not be subject to the laws of the federal government, except as provided by the Covenant. They have a heightened interest in maintaining autonomy and control in the context of local government, the only government in which they do have a voice.

Commonwealth self-government means that the people of the CNMI will enact, interpret, and execute their own local laws without unnecessary interference by the federal government.[12] Neither the U.S. Congress nor any other branch of the federal government may freely infringe upon this right.[13]

---

[12] See *Sablan v. Inos*, 3 N.M.I. 418, 431 (1993):

> When the Covenant provides that '[t]he people of the Northern Mariana Islands will have the right of local self-government *and* will *govern themselves* with respect to internal affairs,' it means that it is the *people* of the *CNMI* who will *govern*—not Congress. At a minimum, the people of the CNMI will enact local laws, interpret local laws, and execute local laws—not the federal government.

(Footnotes omitted). *Cf. Guerrero*, 4 F.3d at 754 ("The Covenant has created a 'unique' relationship between the United States and the CNMI, and its provisions alone define the boundaries of those relations") (citing *Commonwealth v. Atalig*, 723 F.2d 682, 687 (9th Cir. 1990)).

[13] *See* Covenant § 105. This section provides:

> The United States may enact legislation in accordance with its constitutional processes which will be applicable to the Northern Mariana Islands, but if such legislation cannot also be made applicable to the several States the Northern Mariana Islands must be specifically named therein for it to become effective in the Northern Mariana Islands. In order to respect the right of self-government guaranteed by this Covenant the United States agrees to limit the exercise of that authority so that the fundamental provisions of this Covenant, namely Articles I, II and III and Sections 501 and 805, may be modified only with the consent of the Government of the United States and the Government of the Northern Mariana Islands.

---

[11] Covenant, Preamble ¶¶ 3, 5 (emphasis added).