Pastor A. BASIENTE; Nore V. Basiente; Warren Santy; Erotita Santy; Hermes Moni; Lydia Moni; George Santer; Karie Santer; Kosme K. Sos; Vienna R. Sos; Tarsy William; Ernat Ninty; Hinaria Nitey; Haddy Tenorio; Bertina Limux, Plaintiffs–Appellants,

v.

Dan GLICKMAN, U.S. Secretary of Agriculture; Shirley R. Watkins, Undersecretary for Food, Nutrition and Consumer Services; Eloise Furley,

8. Maj. Op. at 1135.

Acting CNMI Secretary of Community and Cultural Affairs; James Kintol, Administrator, Nutrition Assistance Program, Defendants–Appellees.

No. 99–17264.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 14, 2000[1]

Filed March 19, 2001

---

1. The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Jay H. Sorenson, Saipan, MP, for the plaintiffs-appellants.

David Lochabay, Saipan, MP, for the CNMI defendants-appellees.

Michael Jay Singer and Michael S. Raab, Civil Division, U.S. Department of Justice, Washington, D.C., for the federal defendants-appellees.

Before: HUG, TROTT, and WARDLAW, Circuit Judges.

HUG, Circuit Judge:

The Appellants are citizens of the Federated States of Micronesia who reside in the Commonwealth of the Northern Mariana Islands ("CNMI"). This case concerns the Appellants' claims that they are entitled to receive benefits from the Nutrition Assistance Program (NAP), even though their status is that of aliens in CNMI. The Appellants originally received benefits under the program, but because they are aliens, they became ineligible to receive benefits after the passage of the Personal Responsibility and Work opportunity Reconciliation Act of 1996 ("Welfare Reform Act"), 8 U.S.C. § 1601 et seq. The statute vested authority in the Secretary of Agriculture ("The Secretary") to waive the restrictions for aliens receiving NAP benefits in CNMI and specified territories. The waiver process is to be carried out with the cooperation of the governments of CNMI and the specified territories. Any such waiver requires the consent of Congress, which can be given by failure to object within 60 days.

The Secretary indicated by letters to Congress his intention to waive the applicability of the Welfare Reform Act provisions for CNMI that preclude the Appellants from receiving the benefits. He did so under the assumption that the CNMI wished to extend the benefits to those individuals that received benefits prior to the passage of the Welfare Reform Act. Upon learning that the CNMI government did not desire the waiver, the Secretary did not issue it.

The twelve Appellants sued the Secretary and several government officials of CNMI contending that they were entitled to the NAP benefits once the Secretary had indicated his intention to waive the restrictions and Congress did not object. They further contend that the actions of the CNMI Governor violated their rights

under the Equal Protection Clause of the United States Constitution.

The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a) and 28 U.S.C. § 1291 and granted summary judgment for the defendants. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the judgment of the district court.

## BACKGROUND

Appellants are citizens of the Federated States of Micronesia who are residing in the CNMI. They were deemed eligible for and received NAP benefits until January 1, 1998. Under the NAP, the CNMI distributes nutritional assistance to qualifying members of the community in the form of coupons. The NAP exists pursuant to the authority granted to the Secretary under 48 U.S.C. § 1469d(c), which provides in part "[t]he Secretary of Agriculture is authorized to extend, in his discretion, programs administered by the Department of Agriculture to ... the Northern Mariana Islands...." Under this authority, the United States Department of Agriculture and the CNMI Department of Community and Cultural Affairs execute a Memorandum of Understanding each year governing the operation of the NAP. The program is federally funded by the USDA's food stamp budget. Although similar in its purpose and in many of its features, the NAP is not part of the Food Stamp Program. Unlike the Food Stamp Program, the NAP is funded by a capped block grant rather than a mandatory appropriation. Thus, applicants for NAP benefits who satisfy eligibility criteria can have their benefits denied or reduced once payments under the program reach the capped amount of the federal grant.

Appellants' NAP benefits were terminated as a result of the congressional enactment of the Welfare Reform Act on August 22, 1996. *See* H.R. 3734, P.L. 104–193, 110 Stat. 2105, *codified at* 8 U.S.C. § 1601 et seq. The Welfare Reform Act imposes a number of welfare restrictions on the receipt of Federal public benefits by aliens. Section 401 of the Welfare Reform Act provides that, with certain exceptions, an alien who is not a "qualified alien" is ineligible for any "Federal public benefit." *See* 8 U.S.C. § 1611. The term "Federal public benefit" includes "any grant ... provided by an agency of the United States or by appropriated funds of the United States" and "any ... welfare, health, disability, ..., food assistance, ... or any other similar benefit" provided by an agency of the United States or by appropriated funds of the United States. 8 U.S.C. § 1611(c)(1)(A), (B). NAP benefits are "Federal public benefits" within the meaning of 8 U.S.C. § 1611(c). An "alien" is defined as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). A "qualified alien" is an alien "who, at the time he or she applies for, receives, or attempts to receive a Federal public benefit," falls into one of the categories enumerated in the Welfare Reform Act. *See* 8 U.S.C. § 1641(b). The Appellants do not fall within any of the enumerated categories.

Section 431 of the Welfare Reform Act does provide an exception for individuals who have been lawfully admitted for permanent residence under the Immigration and Nationality Act. *See* 8 U.S.C. § 1612(a)(2)(B). These aliens residing in the CNMI are not "qualified aliens" under that exception. Under Article IV of the "Compact of Free Association" ("Compact") entered into between the United States and the Federated States of Micronesia ("FSM"), citizens of Micronesia

> may enter into, lawfully engage in occupations, and establish residence as a nonimmigrant in the United States and its territories and possessions without regard to paragraphs (14), (20), and (26) of section 212(a) of the Immigration and Nationality Act ...

Compact § 141, *reprinted at* 48 U.S.C. § 1901 note. However, the Compact provides that

> [t]he right of such persons to establish habitual residence in a territory and possession of the United States may ... be subjected to nondiscriminatory limi-

tations provided for ... in those statutes or regulations of the territory or possession concerned which are authorized by the laws of the United States.

*Compact* § 141(b)(2), *reprinted at* 48 U.S.C. § 1901 note. Although generally United States' constitutional and statutory laws apply in the CNMI pursuant to the "Covenant to Establish a CNMI of the Northern Mariana Islands in Political Union with the United States of America" ("Covenant"), most federal immigration statutes do not apply. Instead the CNMI enacts and enforces its own immigration laws. *See* Covenant §§ 102, 501–506, *reprinted at* 48 U.S.C. § 1801 note; *Hillblom v. United States,* 896 F.2d 426, 428 (9th Cir.1990). Under a CNMI immigration law established in 1981, aliens cannot acquire permanent resident status. *See* Pub.L. 2–17, *codified at* 3 N. Mar. I.Code § 4201. Accordingly, it is undisputed that the Appellants, who are citizens of Micronesia, do not fit within any of the enumerated categories and therefore are not "qualified aliens" under the terms of the Welfare Reform Act.

After enactment of the Welfare Reform Act, the CNMI and the USDA executed a Memorandum of Understanding for the 1997 fiscal year. The Memorandum of Understanding terminated NAP benefits for those recipients who no longer qualified under the Welfare Reform Act. In November 1997, the NAP forwarded termination notices to nonqualifying recipients, including Appellants, advising them that their benefits would be terminated on January 1, 1998.

Subsequently, the Secretary notified Congress of his intention to waive or modify the eligibility requirements for the NAP programs of the CNMI pursuant to 48 U.S.C. § 1469d(c). The Secretary's request was premised on the view that the "CNMI ... would like the authority to continue to provide NAP benefits to the same categories of individuals" that were provided benefits before the Welfare Reform Act took effect. As required under § 1469d(c), the Secretary sent letters to the respective chairmen of the appropriate

congressional committees. Congress did not act to stop or modify the Secretary's proposal within the sixty-day waiting period specified in § 1469d(c).

Upon expiration of the sixty-day period, Allen Ng, the USDA Regional Administrator for the Western Region, wrote a letter to [CNMI] Governor Pedro P. Tenorio advising him that the Secretary "now has the authority" under § 1469d(c) to waive the provisions of the Welfare Reform Act. The letter requested that Governor Tenorio "submit proposed modifications to the existing NAP Memorandum of Understanding identifying which legal aliens CNMI intends to make eligible for NAP benefits." Finally, Mr. Ng stated that "[s]hould CNMI decide to reestablish the eligibility of some, or all, legal aliens, USDA will determine whether the proposed modifications fit within the limitations" of the proposed waiver.

Governor Tenorio responded to Mr. Ng expressing the CNMI's "reluct[ance] to accept the USDA waiver." The Governor stated that he did not "wish to encourage non-immigrants under the [FSM] Compact to establish habitual residence in the [CNMI], absent employment, or absent an alternate means of self-support." He further explained that "an influx of non-working non-immigrants under the [FSM] Compact not only places a burden on the Nutrition Assistance Program" but also "places a burden on the [CNMI's] infrastructure" and economy. Accordingly, the Secretary took no further action on the matter. Thus, the Appellants remained ineligible for NAP benefits under the Welfare Reform Act provisions.

Appellants brought suit against the Secretary in federal court claiming that they were entitled to NAP benefits. The district court granted summary judgment for the defendants. The Appellants appeal the district court's decision contending: (1) that the Welfare Reform Act provisions were waived as a matter of law once the Secretary notified the congressional chairmen of his intent to grant the waiver and

Congress failed to take any action within sixty days; and (2) that they were denied their rights under the Equal Protection Clause of the Fourteenth Amendment by the Secretary's delegation of his authority under 48 U.S.C. § 1469d(c) to the CNMI Governor.

## STANDARD OF REVIEW

We review a grant of summary judgment de novo. *Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir.2000). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Balint v. Carson City*, 180 F.3d 1047, 1050 (9th Cir.1999) (en banc).

## DISCUSSION

A. *Section 1469d(c)*

■ Appellants contend that the statute sets forth a two-step process and that once these two steps are completed, the waiver or modification takes effect as a matter of law. Specifically, Appellants contend that the proposed waiver automatically takes effect when (1) the Secretary notifies Congress of his proposed action to waive or modify the federal law, and (2) Congress takes no action during a sixty-day waiting period.

■ In interpreting a statutory provision, this court " 'look[s] first to the plain language of the statute ... to ascertain the intent of Congress.' " *See Yang v. California Dep't. of Social Serv.*, 183 F.3d 953, 958 (9th Cir.1999) (quotation omitted). "If the intent of Congress is clear from the face of the statutory language, [the court] must give effect to the unambiguously expressed Congressional intent." *Saipan Stevedore Co. Inc. v. Director, Office of Workers' Comp. Programs*, 133 F.3d 717, 722 (9th Cir.1998). However, if any ambiguity remains, the court must respect the reasonable interpretation of the agency re-

sponsible for administering the statutory program. *See Yang*, 183 F.3d at 958.

48 U.S.C. § 1469d(c) provides that:

[t]he Secretary of Agriculture is authorized to extend, in his discretion, programs administered by the Department of Agriculture to Guam, the Northern Mariana Islands, the Trust Territory of the Pacific Islands, the Virgin Islands, and American Samoa (hereinafter called the territories). Notwithstanding any other provision of law, the Secretary of Agriculture is authorized to waive or modify any statutory requirements relating to the provision of assistance under such programs *when he deems it necessary in order to adapt the programs to the needs of the respective territory: [p]rovided*, [t]hat not less than sixty days prior to extending any program pursuant to this section or waiving or modifying any statutory requirement pursuant to this section, the Secretary of Agriculture shall notify the Committee on Agriculture and the Committee on Natural Resources of the House of Representatives and the Committee on Energy and Natural Resources and the Committee on Agriculture, Nutrition, and Forestry of the Senate of his proposed action together with an explanation of why his action is necessary and the anticipated benefits to each territory affected. *Such programs shall be carried out in cooperation with the respective governments of the territories and shall be covered by a memorandum of understanding between the respective territorial government and the Department of Agriculture.*

48 U.S.C. § 1469d(c) (emphasis added).

We conclude that the plain language of the statute clearly expresses the intent of Congress. Appellants are correct that the Secretary must notify the congressional committees of his proposed action and wait sixty days before extending any program. However, nothing in the statute specifies that once this occurs, the waiver automati-

cally takes effect as a matter of law. This merely provides authority for the Secretary to exercise his discretion if he decides to grant the waiver.

■ The statute unambiguously provides that "cooperation with the respective governments of the territories" is necessary and must be evidenced by a Memorandum of Understanding. *Id.* The statute also grants the Secretary the authority to extend a program "when he deems it necessary in order to adapt the programs to the needs of the respective territory." *Id.* Given this plain language, we conclude the statute supports the district court's conclusion that the Secretary was justified in considering the needs of the CNMI government before exercising his discretion to grant the waiver.

■ Even assuming, arguendo, that the language of § 1469d(c) is ambiguous, the USDA, the agency in charge of administering the statutory scheme, has reasonably interpreted § 1469d(c) to require the Secretary to consider the opinion of the CNMI before effectuating a waiver. Although the Secretary indicated his willingness to issue a waiver, he did so because he incorrectly assumed that the CNMI desired one. The Secretary thereafter learned that the CNMI did not wish to extend NAP benefits to those individuals who received them prior to enactment of the Welfare Reform Act. After considering the concerns of the Governor, the Secretary decided not to issue the waiver. In considering the needs of the CNMI as expressed by the Governor, the Secretary adhered to the requirements under § 1469d(c) to carry out the NAP program in cooperation with the CNMI. Accordingly, we conclude that the Secretary's decision not to waive the provisions after Governor Tenorio expressed reluctance to accept the proposed waiver was within his discretionary power under the statute.

## B. *Equal Protection*

■ The Appellants argue that the denial of NAP benefits denied them their equal protection rights. Under the Cove-

nant, the Equal Protection Clause of the Fourteenth Amendment applies within the CNMI "as if the Northern Mariana Islands were one of the several states." Covenant § 501 *reprinted in* 48 U.S.C. § 1801 note. They contend that the Secretary delegated to the CNMI Governor his power to waive the application of the Welfare Reform Act and that the Governor's action violated their Equal Protection rights, relying on *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). In that case, the Supreme Court held that state statutes that discriminate on the basis of alienage violate the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 376, 91 S.Ct. 1848.

■ The Appellants acknowledge that although states are so restricted, the United States Congress may rationally discriminate based on alienage. *See Mathews v. Diaz,* 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). In *Mathews,* the Supreme Court recognized that Congress had no constitutional duty to provide aliens with the same welfare benefits as citizens. *Id.* at 87, 96 S.Ct. 1883. The Court held that federal laws that discriminate on the basis of alienage will be upheld unless they are "wholly irrational." *Id.* at 83, 96 S.Ct. 1883.

It was the United States Congress' enactment of the Welfare Reform Act that denied the Appellants NAP benefits. It is the Secretary that has the authority to waive the statutory restriction. *See* 14 U.S.C. § 1469d(c). The fact that this authority is to be exercised after considering the view of CNMI does not turn the Governor's expression of his views into "state action" that would invoke plaintiff's rights under the Equal Protection clause. The discretion either to waive or not to waive the restriction of the Welfare Reform Act remains with the Secretary after considering the views of the government of CNMI.

Furthermore, the Governor had rational reasons, which he expressed to the Secretary, as to why the waiver should not be granted in order to adopt the NAP pro-

gram to the needs of CNMI. Under § 141 of the Compact of Free Association, the CNMI is required to allow citizens of the Federated States of Micronesia to reside and work in the territory. *See* Compact § 141. However, under 48 U.S.C. § 1904(e)(1), the statement of Congressional intent provides that "[i]n approving the Compact [which allows FSM citizens to live and work in the CNMI], it is not the intent of the Congress to cause any adverse consequences for the United States territories ..." 48 U.S.C. § 1904(e)(1).

The Governor's letter to the USDA expressed his concerns about the effect the granting of the waiver would have on CNMI:

> As a policy matter, we do not wish to encourage non-immigrants under the Compact to establish habitual residence in the Commonwealth, absent employment, or absent an alternate means of self-support. As you might expect, an influx of non-working non-immigrants under the Compact not only places a burden on the Nutrition Assistance Program. It also places a burden on the Commonwealth's infrastructure (e.g., Public School System, Commonwealth Health Center, Department of Public Safety).
>
> As an economic matter, we are also reluctant to accept the proposed waiver. As you may know, the Asian economic crisis has had a serious impact on the Commonwealth's economy. Between January, 1998 and May 1998(sic), the number of participating households increased from 802 to 921. The number of participating individuals increased from 2815 to 3181. Given the economic situation in the Commonwealth, we believe it would be inappropriate to provide limited block grant nutrition assistance benefits to individuals who are not legally entitled to such benefits.
>
> We appreciate your consideration in this matter.

The Secretary did consider his concerns and did not grant the waiver.

## CONCLUSION

The Secretary has the statutory authority to grant or deny a waiver of the statutory requirements of the NAP program for CNMI. After considering the concerns expressed by the Governor of CNMI he declined to exercise his authority to grant a waiver. The Governor's expressed wish for the Secretary not to grant the waiver did not constitute a violation of the equal protection rights of the Appellants.

AFFIRMED.