**Wayne Anthony ROSS; The Republican Party of Alaska, Inc.; The Alaska Libertarian Party; The Alaskan Independence Party; Mark Chryson; Linda S. McKay, Plaintiffs–Appellants,**

v.

**State of ALASKA; State of Alaska, Division of Elections; Lieutenant Governor Fran Ulmer, in her official capacity of Supervisor of Elections; Sandra J. Stout, in her official capacity of Director of the Division of Elections; Jane/John Doe, 1 through 10, Defendants–Appellees.**

No. 98–35720.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 2, 1999.

Decided Sept. 2, 1999.

---

Kenneth P. Jacobus, Kenneth P. Jacobus, Anchorage, Alaska, for the plaintiffs-appellants.

James L. Baldwin, Assistant Attorney General, Juneau, Alaska, for the defendants-appellees.

Before: HUG, Chief Judge, TROTT and TASHIMA, Circuit Judges.

HUG, Chief Judge:

The Republican Party of Alaska, Wayne Anthony Ross, and Linda S. McKay (collectively, "Republican Party"), and the Alaska Libertarian Party ("ALP"), the Alaskan Independence Party ("AIP"), and Mark Chryson (collectively, "minor parties") appeal the judgment of the district

court dismissing this case. Appellants brought suit challenging Alaska's "blanket primary" system of determining the nominees of political parties. *See* Alaska Stat. §§ 15.25.010–205 (Michie 1989). The district court granted partial summary judgment to defendants State of Alaska, et. al. ("the State") with regard to the Republican Party, holding that the doctrine of issue preclusion barred the Republican Party from relitigating certain issues decided by the Alaska Supreme Court in *O'Callaghan v. State,* 914 P.2d 1250 (Alaska 1996). The district court also dismissed the claims of the minor parties because they failed to demonstrate the existence of an actual case or controversy. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

The issue in this lawsuit is the asserted unconstitutionality of Alaska's "blanket primary" system of determining which candidates will represent political parties in the general election. A blanket primary places all candidates of every political party on the same ballot, and allows voters to vote for any candidate regardless of the voter or candidate's party affiliation. Thus, a registered Republican could vote for an Alaskan Independence Party candidate for Governor, a Republican candidate for United States House of Representatives, and a Democratic candidate for State Senate. *See O'Callaghan,* 914 P.2d at 1254–55. Appellants assert that this system unconstitutionally infringes upon their First and Fourteenth Amendment rights to free political association, right to petition, and right to due process. Therefore, they request a declaratory judgment to that effect, as well as an injunction prohibiting the State from conducting primary elections in any manner other than in conformance with the rules of the political parties.

The initial complaint in this action was filed on February 16, 1995. On February 17, 1995, the Republican Party intervened in the *O'Callaghan* case, an action in the

Alaska Supreme Court which also challenged the constitutionality of the blanket primary. In *O'Callaghan*, the Alaska Supreme Court upheld the blanket primary system, employing a balancing test and concluding that the benefits to the State of such a system outweighed the burdens on the rights of the political parties. 914 P.2d at 1261–63.

A third amended complaint in this case was filed in the federal district court on July 31, 1997. On February 10, 1998, the district court issued an order on the State's motion for partial summary judgment, ruling that issue preclusion barred the Republican Party from relitigating issues decided in the *O'Callaghan* case. In making this ruling, the district court also held that the doctrines of claim and issue preclusion did not affect the minor parties' suits. However, on April 3, 1998, the district court granted the State's motion to dismiss the minor parties, concluding that no case or controversy existed with respect to these parties. A final judgment as to all issues and all parties was issued on July 13, 1998, and Appellants filed a timely appeal on July 22, 1998.

## DISCUSSION

This appeal involves challenges to two separate rulings of the district court: (1) the grant of partial summary judgment to the State on the basis that "issue preclusion" prevents the Republican Party from relitigating the issues decided in *O'Calla-*

*ghan;* and (2) the dismissal of the claims of the minor parties for lack of a case or controversy.

## I. Issue Preclusion and the Republican Party

 The district court's holding that the Republican Party was barred from relitigating issues decided in *O'Callaghan* encompassed the following issues: (1) whether "Alaska's primary laws are per se unconstitutional if the laws conflict with the rules of the political parties; (2) whether Alaska's blanket primary requirement violates these plaintiffs' First and Fourteenth Amendment rights; and (3) whether the State of Alaska must alter its primary election laws to conform with Article XIV, Section 1 of the Rules of the [Republican Party of Alaska]."[1] The Republican Party challenges this ruling with respect to issues (2) and (3). "The district court's grant of summary judgment on res judicata grounds is reviewed de novo." *Hiser v. Franklin*, 94 F.3d 1287, 1290 (9th Cir.1996).[2]

## A. Application of Issue Preclusion

 " 'It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered.' " *Id.* (quoting *Migra*, 465 U.S. at 81, 104 S.Ct. 892).[3] Therefore, Alaska law with regard to issue preclusion applies to

---

1. Article XIV, Section 1 of the Republican Party of Alaska rules provides that "[o]nly registered Republicans, registered Independents, and those who state no preference of party affiliation shall be allowed to vote in the Republican primary election for Governor, Lieutenant Governor, U.S. Senator, U.S. Representative, and members of the State Legislature."

2. While the term "res judicata" is often used to refer specifically to "claim preclusion," it is also sometimes used to encompass both "claim preclusion" and "issue preclusion." However, "issue preclusion" is also commonly referred to as "collateral estoppel." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has

already been litigated or decided, while claim preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4402 (1981). *Hiser*'s description of the standard of review encompasses both claim and issue preclusion. *See Hiser*, 94 F.3d at 1290.

3. There are several exceptions to this general principle, which are discussed in Part I.B, below.

the determination of the preclusive effect of the *O'Callaghan* case. Under Alaska law,

> issue preclusion prohibits a party from relitigating an issue where: (1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action; (2) the issue precluded from relitigation is identical to the issue decided in the first action; (3) the issue was resolved in the first action by a final judgment on the merits; and (4) the determination of the issue was essential to the final judgment.

*Wilson v. Municipality of Anchorage,* 977 P.2d 713, 726 (Alaska 1999); *Jackinsky v. Jackinsky,* 894 P.2d 650, 654 (Alaska 1995).

The Republican Party does not and cannot contest elements (1), (3), and (4). However, it does argue that the issues in this case are not identical to the ones decided in *O'Callaghan* due to events occurring after that case was decided which change the "balance" evaluated in *O'Callaghan.* Specifically, the Republican Party points to the national Republican Party's passage of National Rule 34(f), which provides that no candidate nominated under a system which allows persons who are participating in the selection of nominees of other parties to participate in the selection of Republican nominees will be recognized as a nominee of the Republican party. It further provides that if a state law or state party rule provides for the selection of a Republican nominee in violation of this rule, the Republican nominee will be se-

lected by convention, unless a state party rule provides specifically to the contrary.[4] Another event which changes the issues involved in this case, according to the Republican Party, is Alaska's 1998 gubernatorial primary election, which the Republican Party asserts shows the dangerous effects of cross-over voting.

*Restatement (Second) of Judgments* § 27 cmt. c (1982)[5] sets forth four factors to be considered in determining whether the issue in a proceeding is identical to an issue previously litigated:

> [1] Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first? [2] Does the new evidence or argument involve application of the same rule of law as that involved in the prior proceeding? [3] Could pretrial preparation and discovery relating to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second? [4] How closely related are the claims involved in the two proceedings?

Using these elements as guidelines, it is clear that the issues in this case are identical to those decided in *O'Callaghan.* First, there is substantial overlap in the evidence and arguments, with the only differences being the two changes in circumstances described above. In addition, the same rule of law, a balancing test evaluating the interests of the State and the interests of the parties, would apply to both proceedings.[6] Finally, the claims in-

---

4. The full text of Rule 34(f) reads: "On or after January 1, 1997, no state law or party rule shall be observed that allows persons who have participated or are participating in the selection of any nominee of a party other than the Republican Party, including, but not limited to, through the use of a multi-party primary or similar type ballot, to participate in the selection of a nominee of the Republican Party for that general election. No person nominated in violation of this rule shall be recognized as a nominee of the Republican Party. If state law or state party rule provides for the selection of the nominee of the Republican Party in violation of this rule, the

Republican nominee shall be selected by a convention convened and held under the provisions of Rule No. 32(c), unless a state party rule provides specifically to the contrary."

5. Alaska courts generally follow *Restatement (Second) of Judgments* (1982). *See Hiser,* 94 F.3d at 1290.

6. Like the Alaska Supreme Court in *O'Callaghan,* this circuit employs a balancing test to determine whether a blanket primary infringes upon the rights of the political parties. *See California Democratic Party v. Jones,* 169 F.3d 646, 653 (9th Cir.1999).

volved in the two proceedings are entirely based on a determination of whether of not Alaska's blanket primary is constitutional.

The "changes" set forth by the Republican Party do not change the conclusion that the issues in this case are identical to those resolved in *O'Callaghan*. For example, the Republican Party National Rule 34(f) is intended to advance the same interests identified in *O'Callaghan*-reducing the effect of raiding and promoting party accountability-and the Republican Party does not identify any new interests which the rule seeks to achieve. Moreover, while the Republican Party argues that it may not be able to place any candidates recognized as Republican candidates by the national party on the general ballot, the state party can avoid this result by adopting contrary rules for the selection of its nominee which conform to Alaska law. Finally, the national Republican Party has thus far not applied this rule to prevent a candidate from being recognized as a nominee of the party. Therefore, the passage of Rule 34(f) does not foreclose the application of issue preclusion in this case.

Similarly, the facts of the 1998 primary election do not preclude the application of issue preclusion in this case. The court in *O'Callaghan* acknowledged that there was merit to the position that the danger of raiding exists under a blanket primary. *See* 914 P.2d at 1261. However, the court concluded that the associational burdens on the political parties were outweighed by the state's interests in a blanket primary. *See id.* at 1261–63. Evidence of cross-over voting in the 1998 primary does not affect this analysis.[7] This is particularly true because the Republican Party cites numerous examples where cross-over voting may have affected primaries which took place before *O'Callaghan* was decided. Therefore, we conclude that the issues that the district court found to be precluded are identical to those decided in *O'Callaghan*, and that all of the elements set forth under

Alaska law for applying issue preclusion on the basis of *O'Callaghan* are satisfied in this case.

### B. *Exceptions to Issue Preclusion*

Although the elements for applying issue preclusion under Alaska law are present in this case, the Republican Party urges us to apply several federal exceptions to this doctrine which would allow them to litigate the issues that the district court determined to be precluded by *O'Callaghan.*

■ First, the Republican Party argues that it did not have a full and fair opportunity to litigate the issues in *O'Callaghan*, and therefore issue preclusion should not apply. *See, e.g., Haring v. Prosise*, 462 U.S. 306, 313, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983); *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 480–81, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). The basis for this argument is that the Republican Party did not join the case until it was before the Alaska Supreme Court, and therefore it did not have the opportunity to develop a record. The Republican Party argues that this fact is particularly significant because *O'Callaghan* employed a balancing test, and the development of a record could have changed this balance.

■ In determining whether the Republican Party had a full and fair opportunity to litigate these issues, we are mindful of the principle that "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." *Kremer*, 456 U.S. at 481, 102 S.Ct. 1883. In this case, the Alaska Supreme Court accepted the contentions of the Republican Party that the possibility of raiding and loss of party accountability burdened the Party's associational rights. *See O'Callaghan*, 914 P.2d

---

7. The Republican Party concedes that it cannot demonstrate that cross-over voting affect- ed the result in the 1998 Republican primary.

at 1261. Moreover, the Republican Party fully briefed and argued its position before the Alaska Supreme Court (as well as before the United States Supreme Court in its petition for certiorari), and fails to point to facts that it was unable to present or how these facts would have affected the outcome. Therefore, we conclude that the Republican Party had a full and fair opportunity to litigate the issues decided in *O'Callaghan.*

The Republican Party's other arguments may be disposed of quickly.[8] First, it asserts that issue preclusion is inappropriate in this case because it had "no choice but to intervene before the Supreme Court of Alaska because the constitutional rights of the Republican Party and its members were at stake," and therefore it did not "freely and without reservation submit[ ] its federal claims to the state court." *Haring,* 462 U.S. at 313–14 n. 7, 103 S.Ct. 2368; *England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 419, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). However, this exception does not apply because the Republican Party did not have to intervene in the *O'Callaghan* action. For example, it could have participated as amicus curiae, or declined to participate at all and pursued its complaint in federal court.

The Republican Party also argues that the *"Red Fox"* exception should apply, because the state court's decision was transparently erroneous. However, this exception, described in dicta in *Red Fox v. Red Fox,* 564 F.2d 361, 365 (9th Cir.1977), is explicitly based upon the Indian Civil Rights Act and the "unique historical relationship between the American Indian and the federal government." Moreover, the determination of the state court in *O'Callaghan,* applying a balancing test to find that Alaska's blanket primary was not unconstitutional, was not "transparently erroneous." This determination was based upon a permissible interpretation of United States Supreme Court precedent, a

conclusion bolstered by the fact that this circuit also applied a balancing test in upholding California's blanket primary system. *See California Democratic Party,* 169 F.3d at 653.

■ Finally, the Republican Party argues that issue preclusion should not be applied because the state court was "unwilling or unable to protect federal rights." *Haring,* 462 U.S. at 314, 103 S.Ct. 2368. Examples of situations where this exception may apply are when the state court "did not provide fair procedures for the litigation of constitutional claims, or where a state court failed to even acknowledge the existence of the constitutional principle on which a litigant based his claim." *Allen v. McCurry,* 449 U.S. 90, 101, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Beyond the denial of a full and fair opportunity to litigate, discussed above, the Republican Party does not assert that the Alaska Supreme Court failed to provide fair procedures or failed to acknowledge the existence of the relevant constitutional principles. The fact that the Republican Party disagrees with the decision in *O'Callaghan* falls far short of triggering this exception, and we therefore conclude that this argument is without merit.

On the basis of the foregoing discussion, we conclude that the district court properly found that Alaska law required the application of issue preclusion on the basis of *O'Callaghan,* and that none of the exceptions set forth by the Republican Party are applicable. Accordingly, we affirm the district court's partial grant of summary judgment to the State on this basis.

## II. *Lack of Case or Controversy/Ripeness–AIP and ALP*

■ The second basis for this appeal is the minor parties' challenge to the district court's grant of the State's motion to

---

8. In addition to the exceptions discussed below, the Republican Party argues that there is an exception where controlling facts or legal principles have changed significantly since

the state court judgment. *See Haring,* 462 U.S. at 313 n. 7, 103 S.Ct. 2368. However, the arguments in this regard are identical to the ones discussed above in Part I.A.

dismiss. We review de novo a district court's decision to dismiss a complaint for lack of ripeness. *See Municipality of Anchorage v. United States*, 980 F.2d 1320, 1322–23 (9th Cir.1992). Where the plaintiffs seek declaratory and injunctive relief, the relevant inquiry is whether there is a "substantial controversy ... of *sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." *Aydin Corp. v. Union of India*, 940 F.2d 527, 528 (9th Cir.1991) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)) [emphasis in original]. The minor parties argue that the dismissal was erroneous because they both presented actual cases or controversies. We disagree.

## A. *Alaskan Independence Party*

█ In support of its argument that the district court erred in finding that this action is not ripe, the minor parties point to the AIP's adoption of Bylaw 5.15, which provides: "In any election for public office where the Alaskan Independence Party is authorized by law to nominate a candidate, the State Committee shall be empowered to present a nominee in the name of the Alaskan Independence Party, or to reject any candidate not an Alaskan." The minor parties argue that this conflicts with Alaska Statute § 15.25.030, which allows candidate self-selection by filing a declaration of candidacy. However, as recognized by the district court, this bylaw only comes into play if state law authorizes the party to nominate a candidate. For example, if an unopposed incumbent candidate dies, becomes incapacitated, or is disqualified, that candidate's place on the ballot may be filled through a party petition. *See O'Callaghan*, 914 P.2d at 1255 n. 6; Alaska Stat. §§ 15.25.056, 15.25.110 (Michie 1989). Under those circumstances, the nominee would be selected by the party's central committee or by a manner prescribed in the bylaws. *See* Alaska Stat. § 15.25.130 (Michie 1989). This is the situation addressed by Bylaw 5.15. However, this is the only circumstance where the AIP would be authorized by law to nominate a

candidate-in all other cases the eligible voters of Alaska would do so. *See* Alaska Stat. § 15.25.010 (Michie 1989) ("Candidates for the elective state executive and state and national legislative offices shall be nominated in a primary election by direct vote of the people in the manner prescribed by this chapter."). Therefore, Bylaw 5.15 does not conflict with Alaska laws providing for a blanket primary.

The minor parties also cite Article IX, Section 9.02 of the AIP rules as being in conflict with state law. This section provides that:

> The fact that a voter has voted in the Alaskan Independence Party Primary Election shall not disqualify that voter from voting in the primary election of any other political party or parties where that voter's participation in the primary election of the Alaskan Independence Party is authorized or permitted by the rules of the other party, or by the statutes of the United States or the State of Alaska.

The minor parties argue that this rule requires that a voter be able to vote for a candidate of his party and also a candidate of another party for the same office, and that this conflicts with Alaska's blanket primary laws. However, there is nothing in the language of Section 9.02 which supports such a construction. In fact, this rule actually supports a blanket primary. Under this rule, just as in a blanket primary, voting for an AIP candidate for Governor would not disqualify a voter from voting for a Republican candidate for U.S. Senate. However, there is nothing in the rule that specifies that the voter must be allowed to vote for both parties' candidates for Governor, and therefore the rule does not conflict with Alaska's laws providing for a blanket primary.

Because the minor parties have failed to identify any AIP rules which conflict with the State's blanket primary system and do not present any other evidence of an actual case or controversy associated with that

party, we conclude that the AIP's claims must be dismissed for lack of ripeness.

### B. *Alaska Libertarian Party*

The minor parties also argue that the challenge of the ALP is ripe because it "opposes the primary election system as a concept and desires that each party have the right of self control over the nomination of its candidates." However, no allegation was made of how the ALP would otherwise nominate candidates, and there is no indication that it has adopted a procedure which would conflict with the State's blanket primary system. The minor parties argue that the ALP's action is nevertheless ripe due to the fact that the ALP was not (and is not) ballot qualified and therefore could not place candidates on the primary ballot. Therefore, according to this argument, the ALP's candidates for the general election would have to be designated by the ALP, and this would violate state law. However, Alaska statutes provide for the inclusion on both the primary and general election ballots of candidates of a political "group" (an organization which represents a political program but does not qualify as a party), and these provisions do not contain any requirements relating to how a political group may decide which candidates it supports. *See O'Callaghan,* 914 P.2d at 1255 n. 9; Alaska Stat. §§ 15.25.140–205 (Michie 1989). Therefore, the designation of candidates by the ALP, which was not and is not ballot qualified, does not conflict with Alaska law.

Because the minor parties cannot demonstrate a "substantial controversy ... of sufficient immediacy and reality," *Aydin Corp.,* 940 F.2d at 528, we affirm the district court's dismissal of their claims for lack of ripeness.

### CONCLUSION

Based on the foregoing discussion, we AFFIRM the district court's grant of partial summary judgment against the Republican Party on the basis of issue preclusion,

and the dismissal of the AIP and ALP for failure to present a ripe claim.