**Marc ANDERSON and Ellexa Conway, on their own behalf and on behalf of a class of others s imilarly situated, Plaintiffs,**

v.

**SEAWORLD PARKS AND ENTERTAINMENT, INC., Defendant.**

Case No. 15-cv-02172-SC

United States District Court, N.D. California.

Signed 09/22/2015

Filed 09/24/2015

Christine Saunders Haskett, Tracy Olivia Zinsou, Covington & Burling LLP, San Francisco, CA, Stephen Christopher Whittaker, Covington and Burling LLP, San Diego, CA, for Plaintiffs.

John Morgan Simpson, Michelle C. Pardo, Norton Rose Fulbright U.S. LLP, Washington, DC, Lawrence Yale Iser, Gregory Steven Gabriel, Kristen Louise Spanier, Kinsella Weitzman Iser Kump & Aldisert LLP, Santa Monica, CA, for Defendant.

## ORDER DENYING REMAND

SAMUEL CONTI, UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

The Court turns now to a motion by Plaintiffs to remand this case to State Court. ECF No. 15 ("Mot."). The motion challenges the original notice of removal,[1]

---

1. See ECF No. 1 ("Notice").

is fully briefed,[2] and is appropriate for resolution without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons set forth below, the motion is DENIED.

## II. FACTS

This case includes both the facts alleged in the First Amended Complaint, ECF No. 9-1 ("FAC"), and an unusual procedural history that has followed. As to the former, certain individuals claim to have been deceived by certain advertising statements made by Defendant SeaWorld Parks and Entertainment, Inc. ("SeaWorld" or "Defendant"). FAC ¶¶ 1-12. SeaWorld is well known for and frequently advertises that it cares for sea creatures, including Orcas (otherwise known as "killer whales"). Id. at ¶¶ 4-5, 8-9, 55, 61, 73. Plaintiffs allege these claims are false, and that in reliance thereon they financially supported Sea-World through the purchase of tickets. FAC ¶¶ 11-12, 19-20, 56-57, 65-66, 77-78. However, Plaintiffs here do not seek any monetary damages on behalf of the class. Instead, they seek monetary damages only for themselves, while seeking injunctive relief for the entire class. Id. at ¶¶ 12, 58, 67, 79, 80. The injunctive relief sought would include: (1) ordering SeaWorld to refrain from making statements Plaintiffs believe to be false or misleading regarding orca health; and (2) ordering Seaworld to inform the public on its website that: (a) captivity negatively impacts orca health, (b) orca lifespans are shorter in captivity than in the wild, (c) collapsed dorsal fins are common only in captive orcas, and (d) SeaWorld separates closely related and tightly-knit orca family members. Id.

Procedurally, this case was originally filed in the Superior Court of the State of California for the City and County of San Francisco ("state court"). Notice ¶ 1. Defendant successfully removed on the theory that the case involved at least $5 million, sat in diversity, and had a plaintiff class of at least 100 people, giving federal courts jurisdiction under the Class Action Fairness Act ("CAFA"). Id. at ¶ 4-5; see 28 U.S.C. § 1332(d). Plaintiffs argue that this calculation is improper, as Plaintiffs intentionally did not seek any class damages, thus falling well below the monetary threshold required. Mot. at 1-6. Accordingly, Plaintiffs now seek remand back to state court.

When the original motion for remand was filed, the Court quickly learned that Plaintiffs had filed other cases pending elsewhere in the country. Notice ¶ 6(d)-(e); ECF Nos. 1–3 and 1-4 (jointly, "Hall v. SeaWorld Compl."), 6-1 ("Gaab v. Sea-World Compl."); 24 Ex. A ("Kuhl v. Sea-World Compl."); 24 at 69-74.[3] These other cases are highly similar in nature to this case, except that the other cases are in federal court, plead extra information about SeaWorld's alleged mistreatment of orcas, and affirmatively seek over $5 million in monetary damages. The Defendant also asserts—and submissions by Plaintiffs in no way dispute (they may generally

---

2. See ECF Nos. 23 ("Opp'n"), 29 ("Reply"); see also ECF No. 28 (re-noticing the motion on the same grounds).

3. A comparison of these other three cases showed that Hall v. SeaWorld and Gaab v. SeaWorld have overview and fact sections which are word-for-word identical except for: (1) definition of the named plaintiffs (Gaab has a second named Plaintiff, causing all its following paragraphs to be numbered one higher than in Hall); (2) a time-based reference in paragraphs 211 and 212, respectively ("Just last month" versus "Two months ago"); and (3) Subsection "K" which includes specific plaintiff allegations. When compared to Hall or Gaab, Kuhl v. Seaworld is substantially similar, with almost all the same section headings and lots of identical language (sans the noted differences), though it occasionally skips a paragraph present in the former two complaints. Compare Kuhl v. SeaWorld Compl. with Hall v. SeaWorld Compl. and Gaab v. SeaWorld Compl.

support)—that the class in the instant case would include the named plaintiffs in some or all of the above cited suits. See Notice ¶ 6, ECF No. 24 at 69-74, Opp'n at 3 n.1, 4 n.3, 10, 10 n.6.

The Court also learned that the Judicial Panel for Multidistrict Litigation ("JPML") was going to consider whether consolidation in a multidistrict litigation case (an "MDL") was appropriate. ECF No. 3. The Court therefore denied attempts by parties to expedite ruling on this motion to allow the JPML a chance to consider consolidation. ECF No. 27. The JPML found that "[t]hese actions do share factual issues," that three actions subject to a pending motion to consolidate in the Southern District of California "essentially constitute but a single action," and that "litigation thus really involves just two actions pending in two California districts." ECF No. 34 ("JPML Order"). The JPML ultimately encouraged coordination and cooperative efforts to minimize or eliminate duplicative efforts, but denied consolidation as an MDL in its Order dated August 5, 2015. Id.

Thus, the Court now has before it, still pending, the instant motion to remand. The motion does not call for the Court to decide whether class certification is or may be proper, only whether the Court should retain jurisdiction over this case at this juncture.

## III. LEGAL STANDARD

### A. Remand

 "A motion to remand is the proper procedure for challenging removal." Moore–Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir.2009). Remand may be ordered either for lack of subject matter jurisdiction or for any defect in the removal procedure. See 28 U.S.C. § 1447(c). "[R]emoval statutes are strictly construed against removal." Luther v. Countrywide Home Loans Servic-

ing LP, 533 F.3d 1031, 1034 (9th Cir.2008). "The presumption against removal means that the defendant always has the burden of establishing that removal is proper." Moore–Thomas, 553 F.3d at 1244. As such, any doubts regarding the propriety of the removal favor remanding the case. See Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir.1992).

### B. The Class Action Fairness Act

CAFA provides that a district court has original jurisdiction where there is diversity between any member of a plaintiff class and any defendant and "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). There must be at least 100 members in the plaintiff class. Id. at § 1332(d)(5)(B).

### C. Amount In Controversy

 When determining the amount in controversy, the Court first considers whether it is "facially apparent" from the complaint that the jurisdictional minimum has been satisfied. See Singer v. State Farm Mut. Auto., Ins. Co., 116 F.3d 373, 377 (9th Cir.1997); Alexander v. FedEx Ground Package Sys., Inc., No. C 05–0038 MHP, 2005 WL 701601, at *2 (N.D.Cal. Mar. 25, 2005). This includes considering claims for damages (general or special), attorneys' fees, and punitive damages. See Conrad Assoc. v. Hartford Accident & Indem. Co., 994 F.Supp. 1196, 1198 (N.D.Cal. 1998); Alexander, 2005 WL 701601, at *2. Attorneys' fees in a class action "cannot be allocated solely to those [named] plaintiffs for purposes of amount in controversy." Alexander, 2005 WL 701601, at *2 (quoting Conrad, 994 F.Supp. at 1198).

 If damages are not specified by the complaint, the Court may review facts submitted by parties and may require parties to submit "summary-judgment-type evi-

dence" relevant to the amount in controversy. Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1336 (5th Cir.1995); Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir.2003); Alexander, 2005 WL 701601, at *2. The party seeking removal "must prove with legal certainty that CAFA's jurisdictional amount is met." Vigil v. HMS Host USA, Inc., No. C 12–02982 SI, 2012 WL 3283400, at *5 (N.D.Cal. Aug. 10, 2012) (citing Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 1000 (9th Cir.2007)).

■ Where "a defendant's assertion of the amount in controversy is challenged...both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Dart Cherokee Basin Operating Co. v. Owens, —— U.S. ——, 135 S.Ct. 547, 554, 190 L.Ed.2d 495 (2014) (citing 28 U.S.C. § 1446(c)(2)(B)). The Ninth Circuit has recently remanded where Courts fail to review adequate proof of the amount in controversy. Ibarra, 775 F.3d at 1195 (9th Cir.2015).

> [T]he Supreme Court has said that a defendant can establish the amount in controversy by an unchallenged, plausible assertion of the amount in controversy in its notice of removal. Dart, 135 S.Ct. at 554–55. Yet, when the defendant's assertion of the amount in controversy is challenged by plaintiffs in a motion to remand, the Supreme Court has said that both sides submit proof and the court then decides where the preponderance lies. Id. Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure.

Ibarra, 775 F.3d at 1197–98.

■ Requirements to certify a suit for injunctive or declaratory relief brought under Fed. R. Civ. P. 23(b)(2) are "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." Parsons v. Ryan, 754 F.3d 657, 687–88 (9th Cir.2014) (citing Rodriguez v. Hayes, 591 F.3d 1105, 1125 (9th Cir.2010)). Such suits have far fewer procedural protections than suits for damages under Fed. R. Civ. P. 23(b)(3), as the inquiry under Fed. R. Civ. P. 23(b)(2) "does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries." Id. at 688. The only inquiry the rule makes is whether "the party opposing the class has acted or refused to act on grounds that apply generally to the class." Fed R. Civ. P. 23(b)(2); see also Parsons, 754 F.3d at 688.

■ The amount in controversy in class actions requesting an injunction may be determined by the cost of compliance by Defendant. See Int'l Padi, Inc. v. Diverlink, No. 03-56478, 2005 WL 1635347, at *1 (9th Cir. July 13, 2005) ("in determining the amount in controversy, we may also include the value of the requested injunctive relief to either party." (citing Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. 2002); Ridder Bros., Inc. v. Blethen, 142 F.2d 395, 399 (9th Cir.1944)); but see In re Ford Motor Co./Citibank, N.A., 264 F.3d 952, 961 (9th Cir.2001) (if "administrative costs of complying with an injunction were permitted to count as the amount in controversy, then every case, however trivial, against a large company would cross the threshold." (citation omitted))[4] ; Ecker v.

---

4. Ford Motor Co. at times seems to rebuff the

Ritter panel's decision, on which Int'l Padi

Ford Motor Co., No. CV0206833SVWTJLX, 2002 WL 31654558, at *2–3 (C.D.Cal. Nov. 12, 2002) (determining amount in controversy by value of the injunction to the Plaintiffs);[5] see generally § 3703 Viewpoint From Which Amount in Controversy Is Measured, 14AA Fed. Prac. & Proc. Juris. § 3703 (4th ed.).

 On a motion for remand, a Court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c) (emphasis added). The Court may award fees "when a defendant's removal, while 'fairly supportable,' was wrong as a matter of law." Balcorta v. Twentieth Century–Fox Film Corp., 208 F.3d 1102, 1106 (9th Cir.2000).

## IV. DISCUSSION

This case may be resolved on two grounds. The first ground is that the value of the injunction-only case may be measured by the value of the injunction to the Defendant. Such valuation exceeds $5 million, and therefore creates jurisdiction under CAFA. The Court relies primarily on this ground in making its ruling.

The second ground relates to the interplay between preclusion and CAFA. The

relies. But Ford Motor Co. states, in relevant portion, that "[t]he question then becomes whether each plaintiff is asserting an individual right or, rather, together the plaintiffs 'unite to enforce a single title or right in which they have a common and undivided interest.'" Ford Motor Co., 264 F.3d at 959 (citation omitted). If the former, the test is the cost to the defendants of an injunction running in favor of one plaintiff, whereas "[i]f it is the latter, we may then look to the 'either viewpoint' rule to determine jurisdiction." Id. (citing Snyder v. Harris, 394 U.S. 332, 335, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969)). Here, Plaintiffs must have a "common and undivided interest" or their class claims for injunction necessarily fail. See Parsons, 754 F.3d at 687–88. Therefore, the "either viewpoint" rule applies.

briefs filed by parties focused far more on this second ground, related specifically to issue preclusion. Claim preclusion (res judicata) would bar a claim from being pursued in its entirety (e.g., future claims by absent litigants), whereas issue preclusion (collateral estoppel) would prevent a party (e.g., absent class members or SeaWorld) from re-litigating a specific issue within a case without actually preventing those future claims from being filed—even though the results may be foregone conclusions. While issue preclusion on its own would not normally form a sufficient basis to deny remand, on these unusual facts it exposes a backdoor that if permitted would frustrate the intent of Congress in CAFA.

The Court addresses first the damages ground, then the concerns raised by parties about preclusion, and then its concern about the intent of Congress via CAFA. Finally, the Court considers attorney's fees.

### A. Damages Pleaded

 Even were the Court to make all reasonable factual assumptions in favor of Plaintiffs, Plaintiffs' motion fails because the value of this case exceeds the $5 million CAFA threshold.

5. There is some confusion within the courts on this area of law. For example, Simmons v. PCR Tech., 209 F.Supp.2d 1029, 1034 (N.D.Cal.2002), states that "[t]he amount in controversy may include the cost of complying with such an injunction." In so doing, it cites Schwarzer, Tashima & Wagstaffe, Cal. Practice Guide: Fed. Civ. Pro. Before Trial ¶ 2:483 (The Rutter Group 2001) and Ford Motor Co., 264 F.3d at 958. However, Ford Motor Co. at that page cites the proposition as an argument by parties, not the panel's ruling. See Ford Motor Co., 264 F.3d at 960–61. Moreover, these cases address jurisdiction by diversity and minimal value due to a single named Plaintiff rather than pursuant to 28 U.S.C. § 1332(d).

No party challenges that there is diversity or that the class would be fewer than 100 people. Notice ¶ 6. The argument between parties revolves around whether Plaintiffs have pleaded an amount in controversy less than $5 million. Plaintiffs assert they have. Mot. at 3-7. If true, the Defendant, as the party seeking removal, "must prove with legal certainty that CAFA's jurisdictional amount is met." Vigil, 2012 WL 3283400, at *5 (citing Lowdermilk, 479 F.3d at 1000). Defendant has submitted a notice and evidence that it has met the jurisdictional amount. See generally Notice. Plaintiffs, in their motion to remand, challenge the relevance and legal sufficiency of that evidence, though do not appear to challenge any fact related to volume or value of ticket sales.

Here, it seems that "[SeaWorld's] assertion of the amount in controversy is challenged by plaintiffs in a motion to remand." See Ibarra, 775 F.3d at 1197–98. If so, this means that "both sides [must] submit proof and the [C]ourt decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Dart, 135 S.Ct. 547, 554. An argument could be made that evidence is not required here where the validity—Vice relevance and sufficiency—of Defendant's evidence is unchallenged. But the Court need not make any such distinction, because even if Dart and Ibarra require factual evidence, the Court finds that here it has received adequate evidence from both sides to resolve the instant motion.

Plaintiffs make legal arguments pointing out why the text of their complaint does not implicate or otherwise request monetary damages for Plaintiffs. As the Court "may also include the value of the requested injunctive relief to either party[,]" Int'l Padi, 2005 WL 1635347, at *1, the Court reasonably infers—and pleaded facts suggest—that Plaintiffs accrue no cognizable monetary benefit from this injunction. If the Court were to provide an opportunity to Plaintiffs to submit evidence, the Court is confident Plaintiffs would claim the injunction has a low monetary value (at this stage in litigation) to ensure their claims fall below CAFA's threshold. Moreover, Plaintiffs cite Dart and Ibarra, Reply at 4, thereby assuring the Court that Plaintiffs knew they could submit evidence should they have desired. Thus the Court is satisfied Plaintiffs have had an opportunity to present evidence.

Defendant SeaWorld has submitted evidence with its notice of removal, and later supplemented that evidence to include an erroneously missing exhibit, the First Amended Complaint to this action, and attachments to their opposition motion. See ECF Nos. 1, 6, 9, 24. SeaWorld's evidence includes three of the complaints in other pending actions. Hall v. SeaWorld Compl.; Gaab v. SeaWorld Compl.; Kuhl v. SeaWorld Compl. It also includes an affidavit by William Powers, Seaworld's Corporate Director of Budgeting and Forecasting. ECF No. 1 at 9 (Powers Decl.) Mr. Powers provides uncontroverted evidence that "in each of the past four years, SeaWorld sold in excess of 500,000 tickets" on-site, just at the San Diego park, at an average cost of at least $50. Id. SeaWorld sold an additional 500,000 per year in each of the last four years online to California customers (determined by zip code) for the San Diego park, at an average cost of at least $30. Id. The Court is thus satisfied it has what limited evidence it needs from both parties, especially in this case where the dispute is primarily legal rather than factual.

Even absent any showing of monetary value of an injunction to the Plaintiffs, the facts readily suggest by a preponderance of the evidence that Defendant would place an enormous (negative) value on the injunctive relief if awarded. See Int'l Padi,

2005 WL 1635347, at *1. Plaintiffs' implied argument is that the Court should not consider the value of allegedly improper ticket sales already sold within the class period. The Court does not reach this argument, but assuming arguendo that Plaintiffs are correct, the Court is still permitted to make "reasonable assumptions" as to SeaWorld's theory of damage exposure. Ibarra, 775 F.3d at 1198. A reasonable assumption here includes that past performance (per the figures below) is indicative (albeit not determinative) of SeaWorld's expected future ticket sales—and so can be used to calculate future losses. SeaWorld makes uncontroverted claims that the value of past ticket sales is "in excess of $160 million" based on sales of at least 4 million tickets during the class period. Opp'n at 4; Mot. at 1, 4; Powers Decl. Using simple math, to arrive at a loss of $5 million in future ticket sales, using the lower rate of $30 per ticket, only 166,667 fewer tickets need be sold. See Powers Decl. This comprises at most a loss of 16.7% of ticket sales.[6]

The Court also considers the damage done by the accusations currently being lobbied against SeaWorld. SeaWorld's reputation, its ability to secure third-party vendors to market ticket sales, and its ability to retain sponsors have all been hit. See, e.g., Gaab v. SeaWorld Compl. ¶¶ 176-202. This is in spite of continued efforts by SeaWorld to issue positive press. Id. at ¶¶ 203-220. If the Court were to issue the injunction Plaintiffs request, forcing SeaWorld to stop positive advertising and affirmatively admit prior wrongdoing, the Court is persuaded that the cost would be far greater than the simple cost of changing words on a webpage. SeaWorld's reputation would be further soiled, it would be still harder to secure third-party vendors for ticket sales, and at least two sponsors (namely American Express and British Airways, id. at ¶ 201, as cited in comparable cases) would be even more pressured to cut ties with SeaWorld. All these factors impact ticket sales.

The Court thus arrives at a reasonable conclusion that the value of compliance to SeaWorld would more likely than not reduce future sales by at least 16.7% in a single year or else result in at least 166,667 future fewer tickets sold over a reasonable period of time. This calculation does not include the value of developing a new, viable marketing campaign or correcting allegedly harmful practices toward certain animals, which could be costly and may be necessitated by the injunction.[7]

Therefore, on the facts as pleaded, the Court finds that the amount in controversy is sufficiently high based on the value of

---

**6.** The 16.7% rough figure assumes future sales will match past sales but-for an injunction, that all losses will be realized in a single year, and that all such losses will be suffered from online revenue rather than on-site sales revenue (each of which yield at least 500,000 ticket sales, adding up to a least 1,000,000 tickets per year). Expanding the period or allowing for the loss of on-site sales (where tickets cost more) would decrease the percentage of future ticket sales reduction that would be required for Defendant to meet the jurisdictional threshold. For example, ticket sales over two years only require an 8.35% overall reduction in (online) future sales. Assumptions in reaching this 16.7% figure therefore favor Plaintiffs in every way possible, which is proper where the Defendant has the burden of proof and where doubts regarding the propriety of the removal favor remand. See Gaus, 980 F.2d at 566.

**7.** The Court is unable to consider such matters without evidence. The Court also notes Plaintiffs cite Porfiria Yocupicio v. Pae Group, LLC et al., 795 F.3d 1057 (9th Cir.2015), ECF No. 35-1 at 11. Per Porfiria, the Court cannot aggregate individual and class claims together to reach the minimal amount in controversy required. See id. Here, the Court does not need (or seek) to do so, and using such an approach (which is not permitted) would still not yield damages in excess of $5 million.

the injunction to SeaWorld to merit federal jurisdiction. Accordingly, Plaintiffs do allege a case worth at least $5 million, giving the Court original jurisdiction under CAFA. Therefore, Plaintiffs' motion to remand is DENIED.

## B. Preclusion Law

Parties argue at length whether preclusion would apply to prevent the filing of individual damages claims were this injunctive-only suit permitted to continue in state court. See Mot. at 7, Opp'n at 8-10, Reply at 3-10. Defendant's concern includes that this injunctive-only case will claim-preclude future individuals who are part of the class and seek damages. This concern would normally be misplaced, as the law in the Ninth Circuit is generally contrary. Moreover, this motion concerns jurisdiction, not class certification. The Court nonetheless fully explains its rationale as necessary background to understand the Court's analysis in the section to follow this one.

 In the Ninth Circuit, "the general rule is that a class action suit [brought under Fed R. Civ. P. 23(b)(2)] seeking only declaratory and injunctive relief does not bar subsequent individual damages claims by class members, even if based on the same events." In re Yahoo Mail Litig., No. 13–CV–04980–LHK, 308 F.R.D. 577, 596, 2015 WL 3523908, at *15 (N.D.Cal. May 26, 2015) (quoting Hiser v. Franklin, 94 F.3d 1287, 1291 (9th Cir.1996)); see also In re Jackson Lockdown/MCO Cases, 568 F.Supp. 869, 892 (E.D.Mich.1983) ("every federal court of appeals that has considered the question has held that a class action seeking only declaratory or injunctive relief does not bar subsequent individual suits for damages."). Plaintiffs cite an MDL where defendants allegedly price-

fixed costs of flat-screen components, and two states challenged certification of injunction-only classes. In re TFT–LCD (Flat Panel) Antitrust Litig., No. 7–1827 SI, 2012 WL 273883, at *1–2 (N.D.Cal. Jan. 30, 2012). There, Judge Illston reasoned (and found on the facts of that case) that claims for monetary damages typically relied on different facts than claims for injunctive relief. Id. (citing Cooper v. Fed. Reserve Bank, 467 U.S. 867, 876, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984)). Judge Illston therefore read the Supreme Court in Wal–Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) to suggest only that "a Rule 23(b)(2) judgment, with its one-size-fits-all approach and its limited procedural protections, will not preclude later claims for individualized relief." LCD, 2012 WL 273883, at *3; see also In re Yahoo Mail, 308 F.R.D. at 596, 2015 WL 3523908, at *15 (quoting LCD).

This general rule has some limited exceptions, but they are often seen when considering a motion for class certification. In Cholakyan (cited by Plaintiffs), plaintiffs alleged violations of consumer protection statutes due to purchases of defendant's vehicles, and consequently sought to certify a class under Rule 23(b)(2). See Cholakyan v. Mercedes–Benz, USA, LLC, 281 F.R.D. 534, 558–60 (C.D.Cal.2012). But when the court there realized the proposed class included former owners and lessees of vehicles who could not benefit from the injunctive relief sought, the court denied certification. Id. at 559 ("Rule 23(b)(2) demands that plaintiff seek an indivisible injunction benefiting all its members at once."). Cholakyan read Dukes as unsettled law where a request for injunctive relief "placed class members' ability to pursue individualized claims for monetary relief in question." Id. at 565.[8] That court

---

8. Despite this language, Yahoo Mail asserted that Cholakyan "concluded that none of the remedies proposed by the plaintiff would re-

sult in classwide relief...[but] did not discuss whether certification of an injunctive relief class would preclude individual damages

therefore felt obligated to raise its concern in its order, though stopped short of finding that the named plaintiff (and retained counsel) were inadequate as other grounds existed to support denial of class certification—not denial of remand. Id.

In another case relied upon by Cholakyan, Ms. Fosmire (the lead plaintiff) sought damages on one ground but not also on a second, available ground. Fosmire v. Progressive Max Ins. Co., 277 F.R.D. 625, 634 (W.D.Wash.2011). The court found that claims splitting by Ms. Fosmire, excluding a certain type of damages (stigma damages), "create[d] a conflict between her interests and the interests of the putative class, rendering her an inadequate class representative." Id. Therefore, class certification was denied. Id. at 635. Again, this was not denial of remand.

 Here, Plaintiff concedes that "[t]o the extent the present case raises issues of fact or law that also are raised by future suits for damages, collateral estoppel may apply to those specific issues." Reply at 8 n.3 (citing Cholakyan, 281 F.R.D. at 565). The Court goes further—here, collateral estoppel will almost certainly apply to those issues, barring the issue from being re-litigated.[9] Moreover, as explained by the Ninth Circuit, "[i]t is now settled that a federal court must give

to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." Ross v. Alaska, 189 F.3d 1107, 1110–11 (9th Cir.1999). Therefore, issue preclusion will ensue from this case whether heard in federal or state court should certain substantive portions be decided prior to any pending case(s) that include damages.

Normally, the Court's conclusion that there would almost certainly be issue preclusion would not necessitate claim preclusion, as was the concern in Cholakyan. The Court agrees that Plaintiffs are normally permitted to seek a solely injunctive class. Mot. at 7-8. And as Plaintiffs point out, the law generally supports the ability of absent class members to still seek to bring damages. Reply at 7-9. But the key difference here—and where Plaintiffs' argument fails—is that the claims for monetary damages which typically rely on different facts than claims for injunctive relief here rely on almost exactly the same facts. Thus the edict of Cooper as reflected in LCD are, in this specific case, inapposite. See Cooper, 467 U.S. at 876, 104 S.Ct. 2794; LCD, 2012 WL 273883, at *2 (citing Cooper). Plaintiffs pleaded a summary of all or almost all the same facts as their cases for damages (except details related to the specific named plaintiffs in this suit. See FAC

claims." Yahoo Mail, 308 F.R.D. at 595 n.7, 2015 WL 3523908, at *15 n.7. The Court decides this motion without resolving said tension.

9. Both parties cite Frank v. United Airlines, Inc., 216 F.3d 845, 853 (9th Cir.2000). See Mot. at n.2, Opp'n at 9-10. Upon review, Frank instructs in line with the Court's findings, to include that there are additional procedural requirements for Fed. R. Civ. P. 23(b)(3) not applicable to Rule 23(b)(2). Frank, 216 F.3d at 851. It does not, however, ultimately answer the immediate concern here because preclusion did not apply on the facts of that case. Id. at 853. Even so, Frank

makes clear that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Id. (citing Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Whether preclusion ultimately will apply here or in any case depends on "the requirements of identity of parties, identity of the factual claim or issue, adequate notice, and adequate representation[,] [which] apply to both claim and issue preclusion." Id. (citing Richards v. Jefferson County, Ala., 517 U.S. 793, 800–01, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996)).

¶¶ 19-20). Insofar as facts from former suits are missing, the Court can reasonably infer or else learn those facts through review of the former complaints.[10] Plaintiffs included such facts because they sought damages for the named plaintiffs in their individual capacities and because all four suits aim at injunctive relief.

The Court need not detail whether such pleadings are adequate for a class under Fed. R. Civ. P. 23(b)(2) or (b)(3). However, where a case requesting only injunctive relief relies on the same facts as another, already-pending case that requests damages, and the injunctive case is comprised of a subset of members who are party to the earlier damages case(s), a court's concern may be reasonably heightened that the effects of issue preclusion from hearing the injunctive case first may effectuate claim preclusion. The Court is therefore concerned that, in the unusual procedural posture of this case and on these specific facts, named Plaintiffs (and their counsel) may not be adequate representatives.

That said, Plaintiffs are correct that this is a motion about jurisdiction, not class certification. Reply at 2. Cases cited that allow for exceptions to the general rule rely on analysis of class certification factors, which is a subsequent determination separate and apart from a court's jurisdiction. See United Steel v. Shell Oil Co., 602 F.3d 1087, 1089 (9th Cir.2010). Therefore,

the Court cannot deny remand solely on grounds of preclusion.

### C. Remand

 The Court does, however, find that the above analysis yields a conflict with CAFA's intent, making remand improper. "Canons of statutory construction dictate that if the language of a statute is clear, we look no further than that language in determining the statute's meaning.... A court looks to legislative history only if the statute is unclear." Lenz v. Universal Music Corp., No. 13-16106, 801 F.3d 1126, 1132, 2015 WL 5315388, at *4 (9th Cir. Sept. 14, 2015) (omission in original)(citation omitted)). In addition, "[w]here Congress has made its intent clear, we must give effect to that intent." Miller v. French, 530 U.S. 327, 336, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (citation omitted).

Here, the Court's first ground (that based on value of the injunction to the Defendant the amount in controversy exceeds $5 million) would obviate any need to consider intent. However, if the Court did not rely on that ground, the Court would still be faced with Plaintiffs' failure to meaningfully address the impact of issue preclusion (vice claim preclusion) on the sister suits that Plaintiffs have brought. See Reply at 7-10; but c.f. Notice ¶ 6(d)-(e); Hall v. SeaWorld Compl.; Gaab v. SeaWorld Compl.; Kuhl v. SeaWorld Compl.; 24 at 69-74. When considering the other pending cases,[11] granting remand here ef-

---

10. The Court has no trouble spotting that, while shorter, the FAC in the instant case is a summary of the same factual allegations presented in Hall, Gaab, and Kuhl. Compare FAC ¶¶ 1-12, 24-37 with Hall v. SeaWorld Compl. and Gaab v. SeaWorld Compl. and Kuhl v. SeaWorld Compl. The arguments in the FAC here (in summary form) or in the other three case complaints (in full form) tend to prove SeaWorld's allegedly deceptive practices or its harm of orcas. The facts provide no greater basis for monetary damages vice just injunctive relief, except as applied to ticket sales (which in the instant case is limited to

named plaintiffs rather than the class). Thus the Court concludes that the facts of the other complaints are presently part of this injunction-only case or will necessarily be offered as evidence in this case.

11. "For jurisdictional purposes, [the Court's] inquiry is limited to examining the case as of the time it was filed in state court." Standard Fire Ins. Co. v. Knowles, — U.S. —, 133 S.Ct. 1345, 1349, 185 L.Ed.2d 439 (2013). However, when this case was filed, two other damages cases were already pending, and there is now a third. See Hall v. SeaWorld

fectively strips the federal jurisdiction required in already pending cases due to the likely preclusive impact of this injunction-only case (if decided first). Thus, on these unusual, specific facts, granting remand in line with the statutory text meaningfully prevents litigation of the other cases in federal court—cases where the same statutory text provides original jurisdiction to federal courts.[12] Therefore, it is appropriate here for the Court to consider Congress's intent.

The intent of Congress in CAFA provides adequate grounds to deny remand. The relevant text of CAFA reads:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant[.]

■ 28 U.S.C. § 1332(d)(2). On its face, this statutory text evidences Congress's intent to offer a federal forum to class actions between parties siting in diversity where the value in question is above a certain threshold. Moreover, "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court. 28 U.S.C. § 1332(d)." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197 (9th Cir. Jan 8, 2015). And lest that

be unclear, the Ninth Circuit in the very next breath stated that "Congress intended CAFA to be interpreted expansively. S.Rep. No. 109-14, at 42 (Feb. 28, 2005)." Ibarra, 775 F.3d at 1197. There can thus be no question that Congress intends for high-value class suits to be heard in federal court.

Here, Defendants have sought a federal forum four times—thrice in the Southern District of California, and once here. Should the case here be returned to state court and the state court case hears this case first, all four presently-pending cases would (or at least could) effectively be decided by the state court instead of the federal court, per the Court's earlier analysis of the almost-certainty of preclusive effects. Ross, 189 F.3d at 1110–11; see also Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). This would essentially deprive Defendants of a federal forum, which thereby runs contrary to Congress's intent.

■ As courts have made clear (again, per the discussion above), there is no problem with pursuing injunctive relief rather than damages in a class action. But deprivation of a federal forum in violation of Congress's intent in CAFA was not the issue faced by the cases upon which parties relied.[13] Nothing suggests those same courts would permit break-away, injunctive-only cases where such cases are filed

---

Compl.; Gaab v. SeaWorld Compl.; Kuhl v. SeaWorld Compl,; ECF No. 24 at 69-74.

**12.** The Court is cognizant that issue preclusion does not normally remove jurisdiction to hear a case. Here, however, the preclusive effects are so pervasive that they are likely to do so de facto.

**13.** Plaintiffs, for example, rely on LCD. Reply at 8-9. Whereas Judge Illson worried that granting credence to arguments of preclusion of future claims would "eviscerate the (b)(2)

class, preventing its use whenever there was a chance that unknown class members might have damages claims", LCD, 2012 WL 273883, at *3, here there are known class members who affirmatively have damages claims that will almost certainly be precluded. Moreover, there cases were within the control of an MDL and Judge Illston had no apparent concern that a state court might make a decision that would preclude the master case over which she presided, let alone prematurely turn control of the MDL over to a state court.

primarily as a tactic to litigate already-pending federal court cases in a state court—not where Congress intended such cases be litigated in federal court. If this strategy were allowed, parties could easily circumvent CAFA by simultaneously filing a damages case and a separate injunctive-only case in different federal districts, one in a local federal court and one in a local state court. Such a strategy would allow both cases to be effectively litigated in the first instance in a state court. In turn, a federal court would be forced to accept the findings from a state court, Ross, 189 F.3d at 1110–11; Migra, 465 U.S. at 81, 104 S.Ct. 892, leaving the federal court to focus only on such matters as relate entirely to predominance and damages—matters that would almost certainly settle in light of the heightened impact of issue preclusion.[14] Moreover, this strategy would lead to present class members who are actively choosing (or will soon choose) whether to opt-out being precluded by a case they are not present to litigate but which may have already been decided.[15] These absurd results from federal courts abdicating their role in class actions are contrary to the intent of Congress per CAFA, and illustrate why, on the unusual facts of this case, remand is hereby DENIED.

This analysis is not to be read as a general prohibition on injunctive-only cases, on damages cases, or even seeking both forms of relief in a single case. Nor is it meant to forbid break-away cases seeking injunctive-only relief within the same federal forum. Rather, it is a cautionary message—based on the specific factual circumstances of this case—that when pres-ently already seeking damages in one or more pending class suits in federal court, one cannot use a technically separate yet substantially similar, break-away, injunctive-only case as a backdoor to avoid the federal forum. Doing so violates the intent of Congress in CAFA, and so here merits (and provides a secondary ground for) denial of remand.

## D. Attorneys' Fees

 The Court finds that SeaWorld's removal was proper and that Plaintiffs' motion for remand was "fairly supportable" but wrong as a matter of law. See Balcorta, 208 F.3d at 1106. Even so, the Court declines to award fees. See 28 U.S.C. § 1447(c) (allowing courts discretion). The Court recognizes that Plaintiffs clearly sought to plead in a way they thought would ensure their case would continue in state court and did not expressly allege $5 million in damages. While their strategy here fails for the two grounds provided above, the Court finds that the remand motion itself was nonetheless filed in a good faith belief remand would be granted. Accordingly, each side will bear its own fees on this motion.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs' motion to remand is DENIED in its entirety.

IT IS SO ORDERED.

---

14. The Court's concern here may be consistent with the loss of federal forum being cognizable as harm in other areas of law. See, e.g., Westlands Water Dist. v. United States, 100 F.3d 94, 97–98 (9th Cir.1996) (loss of a federal forum may constitute prejudice when dismissing a case pursuant to Fed. R. Civ. P. 41).

15. Taking this reductio argument a step still further, preclusion here could also render notice and opportunity to opt-out in pending cases meaningless; class members would uniformly act based on the earlier, preclusive case or else later argue notice was inadequate for failure to advise members of the then-pending, preclusive case.